

# Fourth Court of Appeals
## San Antonio, Texas

RECEIVED
COURT OF CRIMINAL APPEALS
10/12/2015
ABEL ACOSTA, CLERK

## MEMORANDUM OPINION

No. 04-15-00348-CR

**IN RE** Sylvia **MARTINEZ**

Original Mandamus Proceeding[1]

Opinion by:  Jason Pulliam, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Jason Pulliam, Justice

Delivered and Filed:  August 26, 2015

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED IN PART AND DENIED IN PART

On June 8, 2015, relator Sylvia Martinez filed a petition for writ of mandamus and an emergency motion to stay proceedings in the underlying criminal cause. Martinez complained of the trial court's (1) denial of her request to issue a writ of habeas corpus, and (2) refusal to entertain the merits of her habeas application. We granted a stay of the jury trial set to proceed in the criminal cause, and requested a response to the petition for writ of mandamus. Having reviewed the petition, record and response filed on behalf of the respondent judge, we conclude that Martinez is entitled to mandamus relief because the trial court refused to rule on the habeas application. Accordingly, we grant the petition for writ of mandamus in part and deny it in part.

---

[1] This proceeding arises out of Cause No. 2014CR1384, styled *The State of Texas v. Sylvia Martinez*, pending in the 187th Judicial District Court, Bexar County, Texas, the Honorable Steve Hilbig presiding.

## BACKGROUND

Martinez was indicted by a Bexar County grand jury on February 26, 2014, and charged with the state jail felony offense of prostitution.[1] *See* TEX. PENAL CODE ANN. § 43.02(c)(2) (West Supp. 2014) (misdemeanor offense becomes state jail felony if accused has three or more prior convictions for the same offense). After two re-sets, jury selection was scheduled to begin on June 8, 2015. On June 5, Martinez filed a pre-trial petition for writ of habeas corpus seeking protection from double jeopardy. Martinez alleged that she plead no contest to the Class C misdemeanor offense of loitering for prostitution in San Antonio Municipal Court on May 23, 2014, in Cause No. B1523240-01. *See* SAN ANTONIO, TEX., CODE OF ORDINANCES, ch. 21, art. I, § 21-25(c) (1998). Martinez contended that the prosecution in state court for a similar offense arising out of the same criminal transaction was barred by her prior conviction in municipal court as a violation of her constitutional right to be free from double jeopardy. *See* U.S. CONST. amend. V, XIV; TEX. CONST. art. I, §§ 10, 13, 14.

Before trial began on June 8, and with the veniremen waiting outside the courtroom, respondent denied the issuance of the writ, signing a hand-written order stating only, "Request for issuance of writ denied." Respondent refused to rule on or consider the merits of Martinez's application for habeas, advising counsel, "we're going to go forward with the trial." After defense counsel presented a handwritten motion for continuance, the trial court heard argument of counsel, and granted a two-week continuance of the trial setting. The record does not reflect that Martinez presented her habeas application to any other court. Instead, Martinez immediately filed this petition for writ of mandamus and requested a stay of the trial pending determination of the

---

[1] We note that Martinez was not arrested until March 2015, at which time she was assigned appointed trial counsel.

mandamus. This court granted a stay of the trial and requested a response, which was filed on June 29, 2015.

## ANALYSIS

Mandamus is an extraordinary remedy available in criminal cases only when the relator can demonstrate, "a clear right to the relief sought." *Stotts v. Wisser*, 894 S.W.2d 366, 367 (Tex. Crim. App. 1995) (orig. proceeding). A relator must demonstrate that the act sought to be compelled is purely ministerial and that relator has no other adequate legal remedy. *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 198 (Tex. Crim. App. 2003) (orig. proceeding). Generally, the absence of a right of appeal satisfies the mandamus requirement that relator has no adequate legal remedy. *Id*. at 203. This court has authority to issue mandamus to direct a trial court to proceed to judgment in a habeas corpus proceeding, though we may not direct the trial court to enter a particular judgment on the application. *Crofts v. Court of Civil Appeals for Eighth Supreme Judicial Dist.*, 362 S.W.2d 101, 105 (Tex. 1962) (orig. proceeding); *Von Kolb v. Koehler*, 609 S.W.2d 654, 655-56 (Tex. Civ. App.—El Paso 1980, orig. proceeding).

A writ of habeas corpus is the proper procedural mechanism for a person charged with a felony to challenge the restraint of her liberty on the basis of double jeopardy. *See Ex parte Denton*, 399 S.W.3d 540, 545 (Tex. Crim. App. 2013) (orig. proceeding); *Ex parte Robinson*, 641 S.W.2d 552, 553-54 (Tex. Crim. App. 1982).

Martinez contends the trial court has a ministerial duty to both issue the writ and to consider the merits of her habeas application before she is put to trial on the pending felony charge. Because no appeal is available from either the refusal to issue a writ or the failure to take action on the merits of her habeas application, Martinez contends mandamus is her only available remedy.

Respondent argues that Martinez is not entitled to mandamus relief because the decision to issue a writ and grant a hearing on a pre-trial application for writ of habeas corpus is within the

court's discretion, citing this court's opinion in *Ex parte Carter*, 849 S.W.2d 410 (Tex. App.—San Antonio 1993, pet. ref'd). Further, Respondent contends the ability to present her habeas application to another district judge having jurisdiction provides Martinez with an adequate legal remedy precluding mandamus relief. *See In re Altschul*, 236 S.W.3d 453, 456 (Tex. App.—Waco 2007, orig. proceeding); *In re Piper*, 105 S.W.3d 107, 110 (Tex. App.—Waco 2003, orig. proceeding).

Respondent relies in part on *Ex parte Carter* in asserting that Martinez is not entitled to mandamus relief. *Carter*, 849 S.W.2d at 412 (trial court has no duty to grant hearing on habeas application). In *Carter*, this court dismissed Carter's attempted appeal "from an order denying an application for a pre-trial writ of habeas corpus in which the appellant claimed violations of the double jeopardy provisions of the federal and state constitutions." *Id.* at 411. The trial court denied Carter's request to issue the writ of habeas corpus. *Id.* at 412. Carter appealed only from the trial court's refusal to issue the writ, not from an order denying habeas relief based on the merits of the habeas application. *Id.* Because the trial court had only denied Carter's request to issue a writ and never reached the merits of the application, there was no appealable order. *Id.* at 413. This court concluded that it lacked jurisdiction over Carter's attempted appeal because no appeal is available from the refusal to issue the writ. *Id.*

*Ex parte Carter* highlights the distinction between the decision to issue the writ and the decision to grant or deny habeas relief. *Ex parte Hargett*, 819 S.W.2d 866, 869 (Tex. Crim. App. 1991). Where an application for habeas relief is presented, the judge must decide whether to issue the writ and whether to grant or deny habeas relief. *See Nichols v. State*, 255 S.W.2d 522, 526 (Tex. Crim. App. 1952). No appeal is available from the court's decision not to issue the writ. *Ex parte Villanueva*, 252 S.W.3d 391, 395 (Tex. Crim. App. 2008); *Hargett*, 819 S.W.2d at 868; *Carter*, 849 S.W.2d at 412. There is also no appeal available where the judge refuses to take any

action on the application. *Nichols*, 255 S.W.2d at 526. However, where the judge denies habeas relief, either with or without issuing the writ, the applicant has the right to appeal. *Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 650 (Tex. Crim. App. 2005) (orig. proceeding); *Hargett*, 819 S.W.2d at 868; *Nichols*, 255 S.W.2d at 526; *Carter*, 849 S.W.2d at 413; *Williams v. Harmon*, 788 S.W.2d 192, 193 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding). Sometimes, it is difficult to determine whether the judge has granted the writ and denied habeas relief, or merely refused to issue the writ. *Nichols*, 255 S.W.2d at 526. It is clear from the record in this case that the judge not only denied issuance of the writ, but also refused to rule on or consider the merits of Martinez's application. When a trial court declines to rule on or consider the application for habeas relief itself, the Court of Criminal Appeals has suggested two possible remedies: present the application to another judge with jurisdiction; or seek mandamus relief. *Villanueva*, 252 S.W.2d at 394 (*citing Hargett*, 819 S.W.2d at 868).

The primary issue we must decide in this proceeding is not whether the trial court has a ministerial duty to issue the writ, but whether the judge had a ministerial duty to provide a ruling on the habeas application itself before requiring the parties to proceed to trial. If there is such a duty, we must also determine whether Martinez had an adequate remedy other than mandamus for the trial court's failure to do so. We recognize that Martinez did not file her application for habeas relief until trial was imminent. The record reflects that on June 8 with Martinez present in open court, the judge denied issuance of the writ, stated that he would not conduct a hearing on the application, and that the case would proceed to trial immediately.

Generally, a party is entitled to a ruling on motions within a reasonable time, giving consideration to the type of proceeding involved. *See In re Shaw*, 175 S.W.3d 901, 905 (Tex. App.—Texarkana 2005, orig. proceeding); *In re Greenwell*, 160 S.W.3d 286, 288 (Tex. App.—Texarkana 2005, orig. proceeding) (party entitled to ruling on pretrial motion rather than being

required to wait until trial). The protection from double jeopardy encompasses both protection against multiple punishments and protection from multiple trials for the same offense. *See Ex parte Benson*, 459 S.W.3d 67, 71 (Tex. Crim. App. 2015) (double jeopardy protects against multiple punishments); *Robinson*, 641 S.W.2d at 554 (Double Jeopardy Clause protects against double punishments and "against being twice put to *trial* for the same offense.") (quoting *Price v. George*, 398 U.S. 323, 326 (1970)). We conclude that where the habeas application is based on a double jeopardy claim, the applicant is entitled to a ruling on the application before proceeding to trial.

As to the adequacy of the possible remedy of presenting her application to another judge, we conclude that in this instance, it was not adequate because trial was to begin immediately. *See Altschul*, 236 S.W.3d at 456 (technically available remedy of presenting application to another court will not defeat entitlement to mandamus relief when remedy is so uncertain, inappropriate or ineffective as to be deemed inadequate); *see also Hargett*, 819 S.W.2d at 868 (under proper circumstances, applicant may pursue mandamus when trial court refuses to consider habeas application). We note again that we cannot direct the trial court to enter a particular judgment on the application, only that Martinez is entitled to a ruling on the habeas application. *Crofts*, 362 S.W.2d at 105; *Shaw*, 175 S.W.3d at 904.

Respondent also contends that Martinez's application is deficient on its face. We do not address the sufficiency of the application in this opinion. While such deficiencies may provide the court with a basis for refusing to issue the writ or for denying the application, we conclude they do not relieve the court of its obligation to rule upon the application prior to trial. *See* TEX. CODE CRIM. PROC. ANN. art. 11.15 (West 2015) (writ shall be granted without delay unless it is manifest from the petition "that the party is entitled to no relief whatever."); *see, e.g., Ex parte Crawford*, 506 S.W.2d 920, 922 (Tex. App.—Tyler 1974, orig. proceeding) (denying application for habeas based on deficiencies); *see also Ex parte Martell*, 901 S.W.2d 754, 757 (Tex. App.—San Antonio

1995, no pet.) (dismissing appeal for lack of jurisdiction after concluding trial court's denial of habeas petition as frivolous did not constitute a ruling on the merits of appellant's claims).

## CONCLUSION

Martinez is entitled to a ruling on her application for habeas relief before being put to trial on the currently pending state jail felony charge of prostitution. The trial court's failure to provide a ruling on the application and insistence on proceeding immediately to trial violated Martinez's protection from double jeopardy. The possibility of presenting her application to another judge was not a viable alternative given the circumstances. Consequently, although that may in some situations present an adequate legal remedy preventing mandamus relief, it does not in this instance. Accordingly, we conditionally grant mandamus relief in part. The trial court is directed to provide a ruling on Martinez's application for habeas relief, or allow an adequate time for her to obtain a ruling from another district judge, prior to proceeding to trial on the pending charge. We are confident the trial court will do as directed. The writ will issue only if we are advised the trial court has failed to do so.

Jason Pulliam, Justice

DO NOT PUBLISH



# Fourth Court of Appeals
## San Antonio, Texas

August 26, 2015

No. 04-15-00348-CR

**IN RE** Sylvia **MARTINEZ**

Original Mandamus Proceeding[1]

### ORDER

On June 8, 2015, relator Sylvia Martinez filed a petition for writ of mandamus complaining of the trial court's denial of her request for issuance of a writ of habeas corpus and failure to consider the merits of her habeas application. This court requested a response to the petition for writ of mandamus on June 17, 2015. A response was filed on behalf of the respondent on June 29, 2015. The court has considered relator's petition and the response and has determined that relator is entitled to only a part of the relief requested. Accordingly, the petition for writ of mandamus is CONDITIONALLY GRANTED IN PART. TEX. R. APP. P. 52.8(c).

The Honorable Steven Hilbig is ORDERED to provide a ruling on Martinez's application for writ of habeas corpus, or allow an adequate time for her to obtain a ruling from another district judge, before proceeding to trial in the underlying criminal proceeding. The writ will issue only if we are notified that Judge Hilbig has not done as directed within fourteen days from the date of this order.

With the petition for writ of mandamus filed in this court, relator also filed a motion for leave to file the petition for writ of mandamus. No leave is required to file a petition for writ of mandamus in this court. TEX. R. APP. P. 52. Therefore, relator's motion for leave to file is DENIED AS MOOT. The temporary stay of trial previously granted by this court is LIFTED with trial to proceed in accordance with this court's opinion.

It is so **ORDERED** on August 26, 2015.

_____
Jason Pulliam, Justice

---

[1] This proceeding arises out of Cause No. 2014CR1384, styled *The State of Texas v. Sylvia Martinez*, pending in the 187th Judicial District Court, Bexar County, Texas, the Honorable Steve Hilbig presiding.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the said court on this 26th day of August, 2015.

Keith E. Hottle, Clerk

NO. 2014CR1384

FILED
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY
15 JUN -5 AM 9: 28
BY Cynthia Lang
DEPUTY

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| | § | |
| | § | 187th JUDICIAL DISTRICT |
| | § | |
| SYLVIA MARTINEZ | § | BEXAR COUNTY, TEXAS |

## PRETRIAL WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM DOUBLE JEOPARDY

**TO THE HONORABLE JUDGE OF THIS COURT:**

COMES NOW, Sylvia Martinez, Applicant herein and Defendant in Cause No. 2014CR1384 pending in this Court, by and through undersigned counsel, and respectfully submits this pretrial writ of habeas corpus seeking relief from double jeopardy pursuant to the Fifth and Four- teenth Amendments to the United States Constitution, and Article I §§ 10, 13, and 14 of the Texas Constitution. In support of the same, Applicant would show this Honorable Court as follows:

### I. The Instant Prosecution of Applicant is Barred by Double Jeopardy both under the United States and Texas Constitutions.

Sylvia Martinez is charged with the State Jail Felony offense of prostitution 3 or more. Al- though the facts and circumstances of her arrest are tangential to the arguments herein, it is sufficient to briefly aver to the State's allegations. According to charges, Sylvia Martinez, loitered near a public roadway, where she encountered an undercover vice officer working for the San Antonio Police Department. She entered the vice officer's vehicle. Once the vice officer allegedly determined that his verbal exchange with her was sufficient to make a case for prostitution, the officer signaled to his uniformed partner to initiate a traffic stop. Upon arrival, the uniformed officer separated Ms. Martinez from the undercover policeman and issued her citations for Loitering in a Public Roadway for the Purpose of Prostitution. Ms. Martinez was

34

subsequently indicted by a Bexar County Grand Jury for violating § 43.02 of the Texas Penal Code, which was enhanced to a state jail felony baased upon her prior convictions for the same violation. On May 23, 2014, Ms. Martinez plead nolo contendere to the Class C offense of Loitering for Prostitution, San Antonio Code of Ordinances § 21-25(c), in cause number B1523240-01 in the San Antonio Municipal Court. The actions for which she was convicted in that cause arose out of the same transaction as cause for which she is indicted in this court.

## a) Applicable Authority

The The United States Constitution and the Texas Constitution prohibit successive prose- cutions and successive punishments for the same offense. U.S. Const. Amend. 5. ("Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."); Tex. Const. Art. I, § 14 ("No person, for the same offense, shall be twice put in jeopardy of life or liberty."). This fundamental right assumes many different forms, but the instant case concerns itself only with whether a defendant suffers double jeopardy when she is prosecuted or con- victed of more offenses than intended by the legislature for a given act or transaction. *Mis- souri v. Hunter,* 459 U.S. 359, 366 (1983). The most commonly applied test for this question was established in 1932, when the Supreme Court of the United States handed down its deci- sion in *Blockburger v. United States*:

> A single act may be an offense against two statutes; and if each statuterequires proof of an additional fact which the other does not, an acquittal or conviction

35

under either statute does not exempt the defendant from prosecution and punishment under th other.

*Blockburger v. United States,* 284 U.S. 299, 304 (1932) (quoting *Morey v. Commonwealth,* 108 Mass. 433, (MA 1871)). Were this the only guidance for courts on the subject of double jeopardy, the clause could be effectively read out of the Fifth Amendment and Article I, § 14. The Legislature could circumvent the citizenry's protection from double jeopardy by simply criminalizing the loading of the firearm, the cocking of the revolver, the aiming of the firearm, and the squeeze of the trigger; prosecuting the defendant for murder in each instance until a conviction is obtained, citing *Blockburger* each time a jury is summoned to justify the subsequent prosecutions. Fortunately, *Blockburger* is not a black letter rule of law, but a tool of statutory construction, and it is not the exclusive tool for the task:

> In the multiple punishments context, *the Blockburger test is simply a rule of statutory construction*, which is useful in attempting to ascertain legislative intent. *Hunter*, 459 U.S. at 366-368. Hence, the Supreme Court has concluded that the *Blockburger* test cannot negate a clearly expressed legislative intent to impose multiple punishments . . . *The Blockburger test's status a a 'mere rule of statutory construction' raises an inverse conclusion as well: the Blockburger test cannot authorize two punishments where the legislature clearly intended only one.* And, that status raises the possibility that *there exist other rules of statutory construction that may be employed* to help ascertain whether a legislature intended multiple punishments.

*Ervin v. State,* 991 S.W.2d 804, 807 (Tex. Crim. App. 1999). In *Ervin,* for example, the Texas Court of Criminal Appeals addressed whether Manslaughter and Intoxication Manslaughter were two separate offenses for double jeopardy purposes, and ultimately concluded that a

36

conviction for one would bar prosecution for the other. *Id* at 815. In so holding, the Court set out a nonexclusive list of factors to consider:

> Whether the offenses provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are named similarly, whether the offenses have common punishment ranges, whether the offenses have a common focus (i.e. whether the "gravamen" of the offense is the same) and whether that common focus tends to indicate a single instance of conduct, whether the elements that differ between the offenses can be considered the 'same' under an imputed theory of liability which would result in the offenses being considered the same under *Blockburger* (i.e. a liberalized *Blockburger* standard utilizing imputed elements), and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes.

*Id* at 814. This approach is consistent with the Supreme Court of the United State's opinion in *Dixon v. United States*, 509 U.S. 688, 704-705 (1993), for several reasons. First, although the *Ervin* court attempts to limit its holding to "multiple conviction" cases arising out of the same prosecution, the *Dixon* court plainly obliterated any distinction between the two for the purposes of "same offense" analysis. *Dixon*, 509 U.S. at 704 ("It is embarassing to assert that the single term "same offence" (the words of the Fifth Amendment at issue here) has two different meanings."). Second, the *Ervin* court explicitly acknowledges that *Dixon* overruled an alternative test - the "same conduct" test - when it reaffirmed *Blockburger*; only a few paragraphs later, the Court adopted the multi-tool approach to statutory construction Texas still applies today. This suggests two important principles: (1) the Texas Constitution requires a more liberated version of *Blockburger* than that required by the Fifth Amendment and (2) that the Supreme Court's rejection of the "same conduct" test (using previously prosecuted conduct to prove an essential element of the subject offense) does not mean that *Blockburger*

should be construed only in the simplest possible terms.

Additionally, it is well settled that a conviction for attempting to commit an offense cannot coexist with a conviction for a completed offense. It is also well settled that when a defendant violates "separate offenses" in a single, continuing act should be subsumed into one another, culminating in a single criminal conviction:

> It is clear that sexual exploitation of children is of great concern to the legislature. The offenses enumerated by the legislature cover a range of deviant sexual conduct, beginning with exposure and continuing though sexual contact to penetration and including incest and child prostitution. The scheme encompasses escalation of abuse; no matter where in the range the perpetrator stops, the offense is complete at that point. *That is not to say that every offense in the range can in all cases be prosecuted as a separate offense. While it is clear from the plain language of the various statutes that the legislature intended harsh penalties for sexual abuse of children, there is nothing in the language to suggest that it intended to authorize "stop-action" prosecution.* Just as a conviction for a completed offense bars prosecution for an attempt to commit the same offense, a conviction for an offense set out in § 3.03 bars conviction for conduct that, on the facts of the case, is demonstrably part of the commission of the greater offense. *For example, indecency by genital exposure of oneself in the course of manual penetration of another are separate offenses, while penile contact with mouth, genitals, or anus in the course of penile penetration will be subsumed. Thus, indecency by exposure may or may not be a part of sexual assault or indecency by contact, depending on the facts of the case.*

*Patterson v. State,* 152 S.W.3d 88, 91-92 (Tex. Crim. App. 2004) (emphasis added).

The fact that Applicant's underlying conviction, upon which her double jeopardy claim rests, is a municipal ordinance violation does not preclude relief. Because the power

of the municipality to enact ordinances springs from the same source of authority as laws promul-gated by the State government - the Texas Legislature - the dual sovereignty exception that permits successive state and federal prosecutions for the same offense is inapplicable. *Benard v. State*, 481 S.W.2d 427, 429 (Tex. Crim. App. 1972) (citing *Waller v. Florida*, 379 U.S. 387, 393 (1970)).

### a) Application and Argument.

Applicant submits that her conviction in the municipal court of San Antonio for loitering for the purpose of prostitution bars her prosecution in the case at bar. Both offenses stem from the same transaction, and taken together, are incidents of the same criminal act. A careful examination of the *Ervin* Factors, recited supra, evidence this fact.

First, although not contained in the same code, the offenses are strikingly similar in their statutory structure. The Texas Penal Code prohibits anyone from offering, agreeing, or engaging in sexual intercourse or deviant sexual intercourse for a fee. Tex. Penal Code § 43.02. The San Antonio city ordinance at issue here similarly criminalizes these acts, relying on the Texas Penal Code definition to fill in the blanks. San Antonio Code of Ordinances § 21-25(b). It then prohibits "loiter[ing] in or near any street or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting, or procuring another to commit prostitution." San Antonio Code of Ordinances § 21-25(c)(1). It further qualifies the offense by requiring the arresting officer to afford the perpetrator an opportunity to explain her conduct. San Antonio Code of Ordinances § 21-25(c)(3). This statutory rubric is so similar to the Texas Penal Code's prohibitions as to

manifest an identical legislative purpose: to arrest and punish people engaged in prostitution. This triggers several of the *Ervin* factors: Similar statutory language, similar statutory names, and a focus indicating a singular course of conduct.

Second, the two statutes share a common focus. To violate the municipal ordinance, the actor must (1) be in a public place or near a street; (2) manifesting her intent to induce, entice, solicit, or procure prostitution; and (3) must fail to give an adequate explanation for her conduct suggesting something other than prostitution. These elements could be simplified to mean "communicating an 'offer' or 'agreement' to engage in prostitution". Nothing in the text of the Texas Penal Code requires a *verbal* offer or an agreement to engage in prostitution. Agreements in criminal law are quite often tacit in nature and inferred from the circumstances; this forms the body of conspiracy law, for example. If someone intent on working as a prostitute sees a potential customer, and steps out into the street to make a suggestive offer or to accept the customer's suggestive offer by means of gesture, provocative dress, or simply eye contact, the actor has triggered the gravamen of the offense in two separate statutes.

Third, this common focus indicates that the elements of the two offenses are the same under an "imputed theory of liability." The language of the ordinance simply rephrases the same elements listed in the Texas Penal Code. "Offer" and "Entice," "Procure" and "Agree" - these terms are virtually interchangeable. The degrees to which they differ are matters of proof rather than alternative manner and means. *Cf. State v. Barbernell*, 257 S.W.3d 248 (Tex. Crim. App. 2008) (distinguishing between alternative methods of proving one element as opposed to distinct manner and means for committing an offense).

40

At best, the municipal ordinance at issue here amounts to an attempt to commit prostitution, which would similarly prove a bar to the instant prosecution. In certain cases even if the acts defined as "loitering for prostitution" under the statute were not identical to the acts constituting an offer, agreement, or financially compensated sexual act, the conduct would undoubtedly amount to an act done with specific intent to commit prostitution, amounting to more than mere preparation, that tends to effect the commission of the offense. Tex. Penal Code § 15.01. Furthermore, as alleged in the case at bar, the act of loitering for prostitution occurred solely to get into the undercover officer's vehicle to finalize the terms of the transaction. The approach of penalizing both that act and the resulting finalization of the terms as two separate offenses falls squarely within the concept of a subsumed, "stop-gap" prosecution disparaged by the Court of Criminal Appeals in *Patterson, supra.*

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** the Applicant prays that for the above mentioned reasons, the Court grant this Writ of Habeas, find that the Applicant is charged with a violation of double jeopardy, set aside the indictment in the above-numbered and entitled cause and for such other relief that this Honorable Court deems just and right.

Respectfully Submitted,

Chad Van Brunt
LAW OFFICE OF CHAD VAN BRUNT
310 S. St. Mary's Street
Tower Life Bldg. – Suite 1840
San Antonio, TX 78205
Tel: (210) 399-8669

Fax: (210) 568-4927

By: _____

CHAD VAN BRUNT
State Bar No. 24070784
Attorney for Sylvia Martinez

## CERTIFICATE OF SERVICE

This is to certify that on **6/6**_____, 2015 a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Bexar County, by hand delivery.

_____
CHAD VAN BRUNT



NO. 2014CR1384

| EX PARTE | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| | § | 187th JUDICIAL DISTRICT |
| | § | |
| SYLVIA MARTINEZ | § | BEXAR COUNTY, TEXAS |

## ORDER

*Request for issuance of writ denied*

On the _____ day of _____, 2015, came on to be heard applicant's pre-trial writ of habeas corpus seeking relief from double jeopardy. Having duly considered the merits of the same, and the arguments and authorities of counsel, the applicant's relief is hereby:

_____GRANTED

And it is therefore ORDERED that the indictment in cause number 2014CR1384 is dismissed with prejudice.

_____DENIED

To which Applicant duly excepts.

_____
PRESIDING JUDGE

*In re*
**Sylvia Martinez,**
*Relator*



The Honorable Steven Hilbig,
Bexar County District Judge,
*Respondent*

# PETITION FOR WRIT OF MANDAMUS

CHAD P. VAN BRUNT
State Bar No. 24070784
310 S. St. Mary's Street
Suite 1840 – Tower Life
San Antonio, Texas 78205

Angela Moore
State Bar No. 14320110
310 S. St. Mary's Street
Suite 1830 – Tower Life
San Antonio, Texas 78205

Attorney for Relator

Identity of Parties and Counsel

Relator:

Sylvia Martinez

Counsel for Relator:

Chad P. Van Brunt
State Bar No. 24070784
310 S. St. Mary's Street
Suite 1840 – Tower Life
San Antonio, Texas 78205

Angela Moore
State Bar No. 14320110
310 S. St. Mary's Street
Suite 1830 – Tower Life
San Antonio, Texas 78205

Respondent:

The Honorable Steven Hilbig
District Judge
187th Judicial District
Bexar County, Texas
300 Dolorosa
Suite 3200
San Antonio, Texas 78205

**TO THE HONORABLE JUSTICES OF THE FOURTH COURT OF APPEALS:**

COMES NOW Sylvia Martinez, Relator in the above Petition, by and through undersigned counsel, and submits respectfully to the honorable justices of the Fourth Court of appeals this Petition for Writ of Mandamus. In support of the same, Defendant would show this Court as Follows:

I.     Relator is charged by indictment with the offense of felony prostitution in Cause Number 2014-CR-1384. Having previously been convicted of the municipal ordinance of loitering for the purpose of prostitution arising out of the same criminal transaction, Martinez's counsel filed a pretrial writ of habeas corpus seeking relief from double jeopardy on June 8, 2015.

II.     Respondent, Steven Hilbig, is the duly elected district judge in the 187th District Court of Bexar County, Texas. By virtue of his office, Respondent has jurisdiction over the case in which Relator is seeking relief.

III.     Respondent refused to issue the Relator's writ of habeas corpus despite his non-discretionary duty to do so pursuant to Article 11.10 of the Texas Code of Criminal Procedure:

> When motion has been made to a judge under the circumstances set forth in the two preceding Articles, he *shall appoint a time when he will examine the cause of the applicant, and issue the writ returnable at that time*, in the county where the offense is charged in the indictment or information to have been committed.

TEX. CODE CRIM. PROC. Art. 11.10 (2015). The plain language of the statute makes clear that there is no discretion afforded to the trial judge on this point. The trial court's action with respect to the issuance of the writ is ministerial rather than discretionary.

Relator has no other adequate remedy at law to compel Respondent to grant the issuance of the writ. Respondent has elected to disregard the writ and proceed to trial immediately, affording Relator no other alternative but to seek this extraordinary remedy.

WHEREFORE, PREMISES CONSIDERED, Relator prays this Court to grant her petition for writ of mandamus to compel Respondent to issue the writ of habeas corpus.

Respectfully Submitted,

/s/ Chad P. Van Brunt

Chad P. Van Brunt
State Bar No. 24070784
310 S. St. Mary's Street
Suite 1840 – Tower Life
San Antonio, Texas 78205

## CERTIFICATION

This is to certify that I have read the above and foregoing document

and the evidence included in the appendix supports the same.

Angela Moor

## CERTIFICATE OF CONFERENCE

This is to certify that undersigned has conferred with the Bexar

County District Attorney's Office and they are unopposed to ~~this petition for~~ the granting of ~~writ of mandamus.~~ the hearing of the WRIT.

Angela Moore

## CERTIFICATE OF SERVICE

This is to certify that on the 8th day of June, 2015, a true and correct copy of the above and foregoing document was served on the Bexar County District Attorney's Office

Angela Moore

REPORTER'S RECORD

TRIAL COURT CAUSE NO. 2014-CR-1384

COURT OF APPEALS CAUSE NO. 04-15-00348-CR

THE STATE OF TEXAS          *     IN THE DISTRICT COURT

VS       .                  *     187TH JUDICIAL DISTRICT

SYLVIA G. MARTINEZ          *     BEXAR COUNTY, TEXAS

-----

PRETRIAL WRIT OF HABEAS CORPUS SEEKING

RELIEF FROM DOUBLE JEOPARDY

-----

On the 8th day of June, 2015, the following proceedings came on to be heard in the above-mentioned and numbered cause before the Honorable Steven C. Hilbig, Judge Presiding, held in San Antonio, Bexar County, Texas:

Proceedings reported by computerized stenotype machine; Reporter's Record produced by computer-assisted transcription.

APPEARANCES:


          HON. STEPHANIE LEWIS, ESQUIRE

          SBN:  24086675

          HON. ALFRED RAMIREZ, ESQUIRE

          SBN:  24081885

          Assistant District Attorneys

          Paul Elizondo Tower

          San Antonio, Texas  78205

                    APPEARING FOR THE STATE




          HON. CHAD P. VAN BRUNT, ESQUIRE

          SBN: 24070784

          Attorney-at-Law

          310 South St. Mary's Street

          San Antonio, Texas  78205

                    APPEARING FOR THE DEFENDANT

P-R-O-C-E-E-D-I-N-G-S

WHEREUPON, the following proceedings were held in Open Court, with the Defendant appearing in person and being represented by counsel, and the State being represented by its Assistant District Attorneys.  The following proceedings were held before the Court, to-wit:

THE COURT:  In the matter of 2014-CR-1384, styled, Ex Parte: Sylvia Martinez.

MR. VAN BRUNT:  Yes, Your Honor?

THE COURT:  I wanted to let you know I read over your request for writ of habeas corpus.  I'm going to deny the issuance of the writ.

MR. VAN BRUNT:  Okay.

THE COURT:  Okay?

MR. VAN BRUNT:  I would like to direct the Court's attention to, I guess, 11.08, I believe, of the Code of Criminal Procedure that says the issuance of the writ -- the writ operates the issues, as a matter of law, that it operates automatically to an issuance.  And I can provide you -- just provide that statutory language.

THE COURT:  Okay.  That's fine, but it's not applicable in this situation.

MR. VAN BRUNT:  Okay.

THE COURT: Okay? That's dealing with bond issues, bail issues regarding writ. And this is a different type of writ, if you will, according to my research. And so --

MS. LEWIS: And according to the Judge's research, I'm sure Your Honor found Ex Parte: Benson, the Court of Criminal Appeals case regarding DWI-3rd and intox-assault. That case cite, just for the record, Judge, is 2015 Tex. Crim. App. Lexis 429. So, I just wanted to make a record of this.

THE COURT: You did. Why? None of it matters.

All right. Anyway, I'm denying the issuance of the writ --

MR. VAN BRUNT: I would just like to object under the Code of Criminal Procedure, if you'll give me one second to cite the proper Code, Your Honor, just for preservation purposes.

THE COURT: Well, I'm aware of the issue that you raised and I'm overruling your objection by denying the writ. Okay?

MR. VAN BRUNT: Okay. So, it's not issued?

THE COURT: No, sir.

MR. VAN BRUNT: Okay.

THE COURT: The writ did not issue because I'm denying the issuance of the writ. Okay?

MS. LEWIS: Thank you, Judge.

COURT REPORTER: Judge, is the defendant present?

THE COURT: I don't think she was. Is the Defendant present, Sylvia?

MR. VAN BRUNT: She's right there, Your Honor.

THE COURT: All right. The defendant was present in open Court. Not at the bench, but in presence in open court.

Y'all step back.

(Recess.)

MS. LEWIS: Judge, can we approach?

THE COURT: Do y'all want to approach? Is that what you're asking?

MR. VAN BRUNT: Yes, please, Your Honor.

MS. LEWIS: Yes.

THE COURT: Y'all may approach.

MR. VAN BRUNT: Thank you, Your Honor.

This is in regard to our pretrial writ. Your Honor. I just want to put some authority in front of you considering the issuance of the writ for your review, considering how under the Code of Criminal

Procedure in 11.08 and Code of Criminal Procedure, 11.10 provide that the issuance is a ministerial act. I believe that your argument to me was that a double jeopardy issue is not cognizable and so could not be issued, so the issuance doesn't take place.

THE COURT: No, that's not what I said.

MR. VAN BRUNT: Okay. I'm just trying to understand what the -- why we cannot get the issuance of the writ, Your Honor.

THE COURT: I don't have to explain it.

MR. VAN BRUNT: Okay. Just for the record, I'd like to cite to -- and we are on Cause Number 2014-CR -- I believe the writ was given the same number as the case.

THE COURT: I'll tell you what. Why don't you go ahead and file those cases with the clerk and let me go about my business here.

MR. VAN BRUNT: Absolutely, Your Honor.

THE COURT: How about that?

MR. VAN BRUNT: That sounds great. Thank you, Your Honor.

MS. LEWIS: Thank you, Your Honor.

(Recess.)

THE COURT: Where are we at on our two remaining cases? Mr. Kagan's case and Mr. Van Brunt,

your case?

MR. VAN BRUNT: Your Honor, we were still insisting upon having our pretrial writ heard. Did you get the authorities I provided you concerning cognizability?

THE COURT: No, I haven't had a chance to look at those, but I'll give you a chance to look at those.

(Proffered to counsel.)

MR. VAN BRUNT: Thank you, Your Honor. I'll take a look at this.

THE COURT: Yeah. And we're not going to have a hearing on your writ, so we're going to go forward with the trial. And if you want me to put you number one, I'll be happy to. We've got somebody else thinking right now.

(Pause.)

THE COURT: It looks like your case may be going.

MR. VAN BRUNT: Your Honor, at the time I would move for a continuance to give me time to file my writ in another Court. Your Honor, I believe this case is jeopardy barred, and I cannot proceed and I cannot waive that issue.

THE COURT: You're not going to waive it

by proceeding to trial.

MR. VAN BRUNT: Well, I believe that if it's jeopardy barred, the trial itself and the proceedings themselves are what we are attacking, the fact of the proceedings and the harm of presenting the trial itself, more or less the jurisdictional issues, will be weighed. And if we can show later that maybe on a relief that it's jeopardy barred, Your Honor, that is not an adequate remedy.

THE COURT: Well, again, we're not going to delay this Court, we're not going to delay the proceedings. Somebody is ahead of you, but if they look like they're resolving the case and I've got a jury out there, then we're going to go forward on this case.

MR. VAN BRUNT: Well, I still move for my continuance on that matter, Your Honor.

THE COURT: Feel free to do whatever you need to do and I'll do whatever I need to do.

MR. VAN BRUNT: Thank you, Your Honor.

THE COURT: Yes.

(Recess.)

THE COURT: We're on the record. This is Cause Number 2014-CR-1384, styled The State of Texas versus Sylvia Martinez.

Mr. Van Brunt, the Court's not happy.

MR. VAN BRUNT: I understand, Your Honor. I apologize.

THE COURT: Well, I mean, look, we can disagree on the law and everything, but I can't have you boycott the Court. We've had a jury out there now for a couple of hours and that's the problem the Court has.

MR. VAN BRUNT: I understand the problem, Your Honor. I am just trying to fight like I can -- best I can to prevent my client's right under the Constitution to not to be put twice in jeopardy. I don't believe we are making a frivolous claim. I think we have a strong claim.

Your Honor, at this time I will be moving -- and if I can have a notarized document, I would like to file a motion for continuance.

THE COURT: Okay.

MR. VAN BRUNT: We'll be currently -- if I can just have a moment to swear to this, so I can properly file it, Your Honor. Just five seconds. I'll stay in the courtroom.

THE COURT: Why don't you do it at counsel table, if you will.

MR. VAN BRUNT: Okay, thanks, Judge.

(Pause.)

MR. VAN BRUNT: Your Honor, would you like

me to file stamp this first?

THE COURT: Yes, if you intend for the Court to consider it.

MR. VAN BRUNT: Absolutely. And I'll be right back.

THE COURT: No, sir. You can do it right here.

(Pause.)

(Proffered to the Court.)

THE COURT: You want the Court to consider this?

MR. VAN BRUNT: Yes, Your Honor. At this time --

THE COURT: Hang on. I have in front of me a motion for continuance.

Sylvia Martinez present in the courtroom, ma'am? Would you please come forward.

(Defendant comes forward.)

THE COURT: Thank you, ma'am.

State, make your announcement, please.

MS. LEWIS: Stephanie Lewis for the State.

THE COURT: Thank you.

MR. VAN BRUNT: Chad Van Brunt for Ms. Martinez.

THE COURT: Thank you.

Ms. Martinez, your attorney has filed a motion for continuance alleging that he has filed the motion for -- filed a writ of habeas corpus -- that he has focused his defense strategy on litigating the writ. That he is not adequately prepared for trial, in essence. You say, not prepared and asks for a continuance to have the writ heard and to properly prepare a defense. And the motion is not for the purpose of delay. Have I correctly asserted --

MR. VAN BRUNT: That is the clip notes version; yes, Your Honor.

THE COURT: Okay. Not much different. All right. And, counsel -- let's see. For the record this is the third trial setting of this matter, I believe. Is that correct, sir?

MR. VAN BRUNT: Your Honor, I believe that what we've had is -- yes, according to the docket schedule we've had three settings. This is the third setting. That is correct, Your Honor. That is true.

THE COURT: And I think I had previously made announcements in this Court that if it is the third setting or more, that you're expected to be ready for trial. If not, with a written motion for continuance; correct?

MR. VAN BRUNT: Yes, Your Honor.

THE COURT: And I think I was just keeping the policy set by my predecessor in this Court. Were you aware of his policy, as well, or not?

MR. VAN BRUNT: No, I was not aware of the policy, Your Honor.

THE COURT: Of his policy?

MR. VAN BRUNT: Of his policy, I was not aware of that, Your Honor.

THE COURT: Okay.

MR. VAN BRUNT: I did -- I mean, there's really not much to it. We were focusing and expecting to get this hearing, instead of the trial, and so --

THE COURT: Well, let's see. I think you presented the writ on Friday?

MR. VAN BRUNT: Yes, Your Honor.

THE COURT: And I believe on Friday we had a short discussion at the bench that it was something that I need not rule on, especially if I found that it was getting close to the trial. And I think that you made some sort of an acknowledgement that that might be the case. Do you recall that or am I misremembering our conversation?

MR. VAN BRUNT: I acknowledge your position that you believed -- I think what you were saying is, considering, like, generally like a 28.01

issue. Is that what you were saying --

THE COURT: I don't know what a 28.01 is.

MR. VAN BRUNT: Okay. The Code of Criminal Procedure about timely filing pretrial motions. This is a pretrial writ of habeas corpus that's collaterally attacking the case. There is no deadline to that, Your Honor. A lot of what, just to be frank, with the delay in the case was getting ahold and making sure that Ms. Martinez was already convicted of the prior statutes in order to file the writ.

THE COURT: I understand. But I guess what I was saying is that I think I gave an indication to you on Friday that we would not be hearing the writ. Now, you may not have taken that as the final word, and I understand that, but I think the Court gave you at least an indication that we would probably not be hearing the writ. Is that a fair --

MR. VAN BRUNT: That is a fair -- you did give me an indication that you were not intending to hear the writ. That is correct, Your Honor. However, we do have disagreements, and my disagreement concerning that matter is under the works, as we speak.

THE COURT: I understand. And of course I've provided you a couple of cases today. I think one Ex Parte: Carter, out of the Fourth Court in '93, that as

far as my research shows is still current law. And I did provide that case to you, and I think another, Williams versus someone.

MR. VAN BRUNT: Yes, Your Honor. And for the record, and I've read those cases. They do talk about whether or not the appeal ability of issuance of the writ and that the alternative means may be to file the writ in another Court.

THE COURT: I understand that.

MR. VAN BRUNT: We are working on all fronts at this very second. That is my situation, Your Honor. And in an abundance of caution and in trying to uphold my client's Constitutional rights, as well as the right -- just the Sixth Amendment right to ineffective assistance of counsel, Your Honor, that I am asking for this continuance. I have focused very hard on this issue. I think we're right on the issue. And I'm just simply -- I've put my weekend focus towards getting ready to try to find a way around this. And I have not sufficiently reviewed the record to my liking or even gone out and had an investigator contact witnesses at this point.

THE COURT: Well, okay. Which gets to the other issue, and that's where I was trying to go with this, and that is that, generally speaking, if there were

matters regarding discovery or other issues, then a due diligence issue comes up when it comes time for a continuance.

MR. VAN BRUNT: And I will admit, Your Honor, that I have -- that I extensively, due to the resulting situation, that the due diligence method would have been to have properly vetted these issues well prior to the State. And I will agreed with the Court that I have made a mistake in that. It doesn't change the fact that I'm ill-prepared at this point.

THE COURT: Well, but, again, in terms of the motion for continuance, if you had adequate time to prepare and chose not to prepare, that's the issue that I have to look at for the existing motion for continuance. Because the problem I would have is any time someone wanted a continuance, they would just come up and say, "Well, Judge, I'm not ready. Well, I didn't get ready." And, therefore, the Court could never then try a case. You understand that situation?

MR. VAN BRUNT: I understand.

THE COURT: And I'm not trying to be difficult to you. I am equally trying to enforce the laws as I understand the law, and I understand that we have disagreements and I can be wrong. And a higher Court has said many times that my opinions, that I have

been wrong at times, so I'm not trying to profess to being fallible, but the problem I have is that we've had a jury out there, ready to go, and I know of no sufficient reason at the present time to grant the motion for continuance.

MS. LEWIS: Judge, if I may. The State does not oppose Defense counsel's motion for continuance. And if I may suggest, Mr. Van Brunt -- if you're not inclined to grant the motion for a continuance, we could just come back tomorrow to give Mr. Van Brunt at least a night to go over some stuff and prepare a little bit more.

THE COURT: Well, the only thing we're going to do right now will be to pick the jury and it's getting later and later in the day to do that, so in terms of --

MS. LEWIS: And they're upset and stuff like that, so --

THE COURT: I don't know if they're upset. Counsel, do you have some reason to believe they're upset?

MS. LEWIS: Just the dirty looks they're giving me in the hallway when I walk by, Judge, for the delay, but that's all.

THE COURT: So I take it that is a surmise

on your part?

MS. LEWIS: Yes, absolutely, that's the only representation that I can make.

THE COURT: But, again, the only thing that will change is two hours to work on your defense. And you say you haven't even done an investigation. You haven't sent an investigator out. Is there some investigation that you intended to do that you have not done in this time period?

MR. VAN BRUNT: Yes, Your Honor. She's been incarcerated since -- just for the record I believe she's been incarcerated since March 17th. The case was an at-large case.

THE COURT: Well, this case has been -- this case was indicted on February 26th of 2014. And do I have the date of your appointment or do you know the approximate date of your appointment?

MR. VAN BRUNT: Yes, I can get that for the Court, Your Honor. It was in March of this year. We were appointed on March 18th at 8:18 p.m. And this case, as I understand it, the date on the indictment reads 2014; however, the case was an at-large case. It was filed at-large on the client. And it wasn't until she was picked up collaterally that this case was set to the Court.

THE COURT: I understand. I'm just indicating the date of indictment shows that date and your date of appointment was March of this year?

MR. VAN BRUNT: That's correct, Your Honor.

THE COURT: And so, again, I'm trying to understand what had prevented you from engaging in an investigation of the facts of this case. Because even if you were looking at double jeopardy issues, you still would have been looking at some of those facts in order to prove the double jeopardy; correct? You would have to prove the same offense and everything.

MR. VAN BRUNT: That is true. There has been review of the police reports in this matter. There was going to be -- I did have an anticipation to seek audio recordings and there was some discovery given of a video recording that turned out not to be the right one. The issue did get settled this morning on the audio recordings. There were none.

Another thing -- and I always have to do and I like to do on these kinds of cases, is have photographs taken out at the scene.

Your Honor, I mean, simply put, in managing my time on this case, I've focused on an issue and not focused on other issues as the preparation for

the trial. However, it is a matter of judicial -- not judicial, but efficiency with my time in this case, as I do juggle other cases and have been in other hearings and matters. I just had oral argument last week in the 3rd Court of Appeals. I have been prepping for numerous different matters and it has been a bit chaotic with the schedule. I simply ask for a short continuance to prepare for this. I think that a couple of days would be fine, even just to make sure I review. I always come to trial, generally speaking, with my voir dire PowerPoint ready to go or at least written. I don't have that today. There's numerous things that I need to cross-reference as well and verify; about the location of the arrest, about the statements made by the officers in the case --

THE COURT: All right. But, again, all of that, we've had plenty of time to do all of that and that's all I'm getting to, Mr. Van Brunt. And I appreciate your frankness with the Court, I do; but, again, the Court is of the opinion that all of those matters could have been addressed previous to this time. You kind of made a choice to put all your eggs in one basket over the weekend, you've told me -- when I indicated that that basket may not be there, even though I had not made a final ruling. So, again, it comes down

to those sorts of judgment issues.

MR. VAN BRUNT: Yes, Your Honor. I appreciate that. Just simply for the weekend purposes, Your Honor, I had to be out of town dealing with a real estate matter that's kind of carrying itself pretty heavily. I know that's not a proper excuse, Your Honor, but it was a very important matter for my family.

(Discussion off-the-record.)

THE COURT: Against my better judgment, I will give you two weeks. This case is back on the trial docket two weeks from today. The docket call will be the Friday before. And Mr. Van Brunt, I suggest to you that the Court will not show you any additional leniency on the same issues that you have raised here.

MR. VAN BRUNT: Thank you, Your Honor. I appreciate that.

THE COURT: Ms. Martinez.

THE DEFENDANT: Yes, sir.

THE COURT: We've been talking around you. Do you have any objection if I grant your attorney's request that I put this case off for two weeks? Do you object to that? Do you want to go to trial today? I know I asked you two different questions. Do you want to go to trial today?

You're shaking your head "no." Can you

say yes or no?

THE DEFENDANT: No. I'm sorry. No.

THE COURT: And do you have any objection that I reset this matter for two weeks?

THE DEFENDANT: No, sir.

THE COURT: All right. That will be the order of the Court. I'll reset this matter for January -- I mean, June 19th docket call. Trial to begin on June 22nd.

MR. VAN BRUNT: Thank you very much, Your Honor.

THE COURT: Y'all may be excused.

(Jury dismissed.)

(Court Adjourned.)

*-*-*-*-*-*-*-

STATE OF TEXAS)

COUNTY OF BEXAR)

I, BETTINA WILLIAMS, Official Court Reporter in and for the 187th District Court, Bexar County, State of Texas, do hereby certify that the foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-entitled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $_____ and will be paid by Bexar County.

WITNESS MY OFFICIAL HAND, this _____ day of June, A.D., 2015.


 /s/Bettina J. Williams
BETTINA J. WILLIAMS, Texas CSR #2003
EXPIRATION DATE: 12-31-16
Official Court Reporter, 187th District Court
Bexar County, Texas
300 Dolorosa, Suite 2129
San Antonio, Texas 78205
(210) 335-2517



# CLERK'S RECORD

## VOLUME  1   OF  1

### TRIAL COURT CAUSE NO. 2014CR1384

### IN THE   187TH    DISTRICT COURT

### OF BEXAR COUNTY, TEXAS,

### HONORABLE STEVEN HILBIG PRESIDING

---

### SYLVIA G MARTINEZ
### VS
### STATE OF TEXAS

---

**DELIVERED TO THE COURT OF APPEALS FOR THE 4TH DISTRICT OF TEXAS, SAN ANTONIO, TEXAS ON Monday, June 29, 2015.**

---

**ATTORNEY FOR APPELLANT:**

**CHAD VAN BRUNT**
**310 S ST. MARYS ST**
**1840**
**SAN ANTONIO, TX 78205**
**PHONE: 210/399-8669   FAX: 210/568-4927**

**DONNA KAY M<sup>C</sup>KINNEY**
**DISTRICT CLERK**
**BEXAR COUNTY**


**BY: /s/** *Jamie L. Osio*

   **Jamie L. Osio**
   **APPEALS CLERK**

# NO. 2014CR1384

**SYLVIA G MARTINEZ**
**DEFENDANT**                                         IN THE DISTRICT COURT

**VS.**                                                          **187TH** JUDICIAL DISTRICT

**THE STATE OF TEXAS**                          BEXAR COUNTY, TEXAS

# <u>I N D E X</u>

**CLERK'S RECORD COVER SHEET**..................................................................................1

**INDEX**......................................................................................................................................2

**TRUE BILL OF INDICTMENT**.....................................................................................3-4
**FILE STAMPED ON 02-26-2014 PG 3*******

**DEFENDANT'S TIMELY REQUEST FOR DISCOVERY, NOTICE,**
**AND INVESTIGATION OF BRADY MATERIAL** ................................................5-25
**FILE STAMPED ON 03-20-2015 PG 5*******

**MOTION TO QUASH INDICTMENT**.......................................................................26-29
**FILE STAMPED ON 04-06-2015 PG 26*******

**MOTION TO QUASH AND SEVER** ...........................................................................30-33
**FILE STAMPED ON 04-06-2015 PG 30*******

**PRETRIAL WRIT OF HABEAS CORPUS SEEKING RELIEF FROM**
**DOUBLE JEOPARDY**.....................................................................................................34-43
**FILE STAMPED ON 06-05-2015 PG 34*******

**MOTION FOR CONTINUANCE**..................................................................................44-47
**SIGNED ON 06-19-2015 PG 47*******

**RESPONSE TO PETITION FOR WRIT OF MANDAMUS**..............................48-60
**FILE STAMPED ON 06-26-2015 PG 48*******

**CRIMINAL DOCKET SHEET**............................................................................................61

**CERTIFICATE**.......................................................................................................................62

**Defendant:** SYLVIA G MARTINEZ
**JN #:**    1613644-1
**CLERK'S ORIGINAL**

**Address:** 219 ORIENTAL AVE, SAN ANTONIO, TX 78204-2065

**Complainant:** R. Lopez

**CoDefendants:**

**Offense Code/Charge:** 400408 - PROSTITUTION- 3 OR MORE PRIORS

**GJ:** 586587    **PH Court:**

**Court #:** 187        **SID #:** 216016    **Cause #:**
**Witness: State's Attorney**

FILED

_____ O'CLOCK _____ M
FEB 26 2014

DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY, TEXAS
BY_____
DEPUTY

2014 CR1384

## TRUE BILL OF INDICTMENT

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS, the Grand Jury of Bexar County, State of Texas, duly organized, empanelled and sworn as such at the January term, A.D., 2014, of the 399 Judicial District Court of said County, in said Court, at said term, do present in and to said Court that in the County and State aforesaid, and anterior to the presentment of this indictment:

on or about the 13th Day of December, 2013, SYLVIA G MARTINEZ, hereinafter called defendant, did knowingly OFFER TO ENGAGE in sexual conduct, namely: DEVIATE SEXUAL INTERCOURSE with R. Lopez, in return for a fee;

and that prior to the commission of the aforesaid offense, the said defendant, SYLVIA G MARTINEZ, had been previously convicted of the offense of PROSTITUTION - 3 OR MORE PRIORS (HABITUAL), on or about the 24TH day of FEBRUARY, 2003, in the 399th District Court, of Bexar County, Texas, in Cause No. 2002CR8251;

and that prior to the commission of the aforesaid offense, the said defendant, SYLVIA G MARTINEZ, had been previously convicted of the offense of PROSTITUTION - 3 OR MORE PRIORS (HABITUAL), on or about the 30TH day of JUNE, 2006, in the 399th District Court, of Bexar County, Texas, in Cause No. 2006CR0231;

and that prior to the commission of the aforesaid offense, the said defendant, SYLVIA G MARTINEZ, had been previously convicted of the offense of PROSTITUTION - 3 OR MORE PRIORS (HABITUAL), on or about the 30TH day of JUNE, 2006, in the 399th District Court, of Bexar County, Texas, in Cause No. 2006CR0232;

### ENHANCEMENT ALLEGATION

And it is further presented in and to said Court, that before the commission of the offense alleged above, hereafter styled the primary offense, on the 14TH of AUGUST, A.D., 1989, in Cause No. 89CR2594, in Bexar County, Texas, the defendant was convicted of the felony of POSSESSION OF HEROIN UNDER 28 GRAMS (REPEAT FELONY OFFENDER);

Before the commission of the primary offense, and after the conviction in Cause No. 89CR2594 was final, the defendant committed the felony of DEL HEROIN UNDER 28 GRAMS and was convicted on the 26TH day of MAY, A.D., 1992, in Cause No. 92-CR-1350, in Bexar County, Texas;

## INDICTMENT – CLERK'S ORIGINAL



**Defendant:** SYLVIA G MAR... .EZ
**JN #:** 1613644-1

AGAINST THE PEACE AND DIGNITY OF THE STATE.

_____
Foreman of the Grand Jury

4



CAUSE NO. 2014-CR-1384

| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | 187TH JUDICIAL |
| | § | |
| SYLVIA G. MARTINEZ | § | BEXAR COUNTY, TEXAS |

## DEFENDANT'S TIMELY REQUEST FOR DISCOVERY, NOTICE, AND INVESTIGATION OF *BRADY* MATERIAL

**TO THE PROSECUTING ATTORNEY FOR THE STATE OF TEXAS:**

COMES NOW SYLVIA G. MARTINEZ, Defendant in the above-entitled and numbered cause, by and through undersigned counsel, and pursuant to Article 39.14 of the Texas Code of Criminal Procedure, the Texas Rules of Evidence, and *Brady v. Maryland*, 373 U.S. 83, 87 (1963) makes this self-executing request to the attorney for the State of Texas to give, in proper form, to Defendant the following:

## I.
## ARTICLE 39.14(a):
## ELECTRONIC DUPLICATES OF DISCOVERY

Pursuant to Article 39.14 of the Texas Code of Criminal Procedure, the Defendant requests the state to produce and provide an electronic duplicate of:

1. Any and all offense reports regarding the incident that forms the basis for this prosecution of the Defendant;

2. All documents and papers, including but not limited to electronic communications, that constitute or contain evidence material to any matter involved in this action;

3. All written or recorded statements of the Defendant;

4. All written or recorded statements of any witness;

5. All books, accounts, letters (including electronic mail and text messages) which constitute or contain evidence material to any matter involved in this action; and

6. All photographs, videos, and recordings which constitute or contain evidence material to any matter involved in this action;

## II.
## ARTICLE 39.14(a):
## INSPECTION OF DISCOVERY

Pursuant to Article 39.14 of the Texas Code of Criminal Procedure, the Defendant requests

the State to produce and permit for inspection:

1. Any and all objects or other tangible things that constitute or contain evidence material to any matter involved in the action. ***In particular, the Defense requests the opportunity to inspect any scales, measurement systems, computer programs, or other means used to calculate the physical properties of any evidence used in this case.***

2. Any evidence subject to the restrictions provided by Section 264.408 of the Texas Family Code;

3. Any evidence subject to the restrictions provided by Article 39.15 of the Code of Criminal Procedure; and

4. Review of Defendant's criminal history through NCIC and TCIC.

## III.
## ARTICLE 39.14(c):
## REQUEST FOR NOTICE OF
## WITHHELD OR REDACTED DISCOVERY
## (PRIVILEGE LOG)

Pursuant to Article 39.14(c) of the Texas Code of Criminal Procedure, the Defendant requests

that the State provide written notice of any portion of any document, item or information withheld

from discovery or redacted by the State or its agents. The State's notice should include the description

of the document, item or information has been withheld or redacted and the legal justification for why

the information is being withheld or redacted. *See* Exhibit A: State's Privilege Log.

6

# IV.
## ARTICLE 39.14(h):
### REQUEST FOR EXCULPATORY, IMPEACHMENT
### AND MITIGATING INFORMATION

Pursuant to Article 39.14(h) of the Texas Code of Criminal Procedure, the Defendant requests the disclosure of any exculpatory, impeachment or mitigating document or item in the possession, custody, or control of the state that tends to negate the guilt of the defendant, impeach a witnesses' credibility, or would tend to reduce the punishment for the offense charged. The Defendant also requests the disclosure of any exculpatory, impeachment, or mitigating *information* known by the State or any member of the prosecution team. A prosecutor has an affirmative duty to turn over to the accused all material, exculpatory evidence, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). The prosecutor's constitutional duty to provide exculpatory evidence to the defense is not limited to cases in which the defense makes a request for such evidence. *United States v. Agurs*, 427 U.S. 97 (1976).

## A. SPECIFIC REQUESTS FOR THE PROSECUTOR TO INQUIRE ABOUT EXCULPATORY, IMPEACHMENT AND MITIGATING INFORMATION

The obligation to disclose favorable evidence to the accused is that of the government and failure to disclose such information is not excused merely because the prosecutor did not have actual knowledge of such favorable evidence. *United States v. Auten,* 632 F. 2d 478 (5th Cir. 1980); *Rhinebart v. Rhay*, 440 F. 2d 725 (9th Cir 1971), cert. den. 404 U.S. 825. The State's suppression of exculpatory evidence violates due process if the evidence is material to either guilt or punishment, irrespective of the good or bad faith of the prosecution. *Brady* at 87. "The duty of disclosure affects not only the prosecutor, but the government as a whole, including its investigative agencies." *United States v. Bryant*, 439 F. 2d 642, 658 (D.C. Cir. 1971).

7

In many cases exculpatory information in the possession of the prosecution team may be unknown to the prosecutor that handles the case at trial. In order to prevent an inadvertent or unintentional *Brady* violation, counsel requests the prosecutor to do the following:

**1. Speak to all members of the "prosecution team."** It is likely that many other people have worked on the case, either in your office or in an investigative capacity. I am requesting that you speak with anyone who has worked on the case and determine whether they possess any information or have made any promises that constitute *Brady* or *Giglio* material. People you would speak to include:

> • **All employees of the BEXAR County or District Attorney's Offices involved with the case.** If any attorney in your office has knowledge of *Brady* or *Giglio* material, that knowledge will be attributed to the entire office. *See Giglio v. United States*, 405 U.S. 150, 154 (1972) ("The prosecutor's office is an entity and as such it is the spokesman for the Government.")

> • **All investigators who handled the case.** *See Kyles v. Whitley*, 115 S. Ct. 1555, 1568 (1995) ("[N]o one doubts that police investigators sometimes fail to inform a prosecutor of all they know. But neither is there any serious doubt that 'procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it.'" (citing *Giglio*))

> • **All federal, state and local law enforcement agents who worked on the case.** If the Texas State Securities Board, the San Antonio Police Department, Homeland Security, ICE, TSA, airport police, FBI, ATF, or any other law enforcement agencies participated in the investigation of this case, those agents are part of the prosecution team. *See United States v. Antone*, 603 F.2d 566, 570 (5th Cir. 1979) ("extensive cooperation between the investigative agencies convinces us that the knowledge of the state team that [witness]'s lawyer was paid from state funds must be imputed to the federal team."); *United States v. Spagnoulo*, 960 F.2d 990 (11th Cir. 1992); *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984) ("[J]oint state-federal drug investigations are quite common, and prosecutors should give some thought to these potential problems of coordination. Being forewarned, they should not simply assume that they have no responsibility for keeping abreast of decisions made by other members of the team."); *United States v. Safavian 233 F.R.D. 12*, 15 (D.D.C. 2005) ("In the course of their investigation, and in collecting and reviewing evidence, the prosecutors must ensure that any information relevant to this case that comes into the possession, control, or custody of the Justice Department remains available for disclosure.") ; *United States v. Jennings*, 960 F.2d. 1488, 1490 (9th Cir. 1992) ("There is no question that the AUSA prosecuting a case is responsible for compliance with the dictates of *Brady* and its progeny. This personal responsibility cannot be evaded by claiming lack of control over the files or procedures of other executive branch agencies."(citations omitted)).

**2. Review all case files maintained by your office and any law enforcement agencies to ensure that all *Brady* material is disclosed to the defense.** Sometimes police officers or law enforcement

agents will not provide the prosecution with all of the information collected during their investigation. Nonetheless, you are responsible for reviewing all of the information in their investigative files, and you must make sure that all exculpatory material is turned over to the defense. *See, e.g., Jamison v. Collins*, 291 F.3d 380, 385 (6th Cir. 2002).

**3. Investigate your witnesses.** Material that impeaches a government witness must be disclosed to the defense, and any impeachment material that you possess or can access easily. There are a few things you must do to guarantee that you meet your *Brady* and *Giglio* obligations:

> • **Examine the personnel files of all investigating agents who may testify at trial.** If there is impeachment evidence regarding any officers involved with the investigation of the case, especially those who may testify at hearings or at trial, it must be disclosed to the defense. *See, e.g., Nuckols v. Gibson*, 233 F.3d 1261 (10th Cir. 2000); *United States v. Muse*, 708 F.2d 513 10th Cir. 1983); *United States v. Brooks*, 966 F.2d 1500 (D.C. Cir. 1992). Thus, you should search the personnel files of all officers involved with the case for such evidence.

> • **Examine the personnel files of all prosecution witnesses who work for the government.** If any prosecution witnesses work for other branches of the government, you should search their personnel files for impeachment evidence, as with the files of law enforcement officers. *See, e.g., United States v. Deutsch*, 475 F.2d 55 (5th Cir. 1973), overruled on other grounds by *United States v. Henry*, 749 F.2d 203 (5th Cir. 1984) (holding that contents of postal worker's personnel file, if they could be used for impeachment, would constitute *Brady* material).

> Further, pursuant to *United States v. Bagley*, 473 U.S. 667, 676 (1985), any evidence that can be used to impeach a prosecution witness's credibility should be disclosed to the defense. This type of evidence includes but is not limited to the following:

> > - Contrary, conflicting statements;
> > - False Reports;
> > - Inaccurate statements and reports;
> > - Other evidence contradicting prosecution witness statements and/or reports;
> > - Promises or offers of leniency, or other inducements, express or implied;
> > - Felony convictions;
> > - Misconduct involving moral turpitude;
> > - Misdemeanor convictions involving moral turpitude;
> > - Pending criminal charges;
> > - Parole or Probation status;
> > - Reputation for untruthfulness;
> > - Alcohol and/or drug use;
> > - Gang membership;
> > - Bias toward the defendant.

> • **Search all criminal record databases to which you have access for criminal records of potential prosecution witnesses.** I presume that you have checked both local and national

databases for any criminal convictions of government witnesses. *See United States v. Perdomo*, 929 F.2d 967, 970 (3d Cir. 1991) (holding that failure to search a local criminal database for informant's criminal convictions is *Brady* violation); *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980) (holding that failure to run FBI or NCIC checks on a prosecution witness constitutes a *Brady* violation).

• **Ask the BEXAR County Sheriff's Office and the San Antonio police department and other regional law enforcement agencies if they have files on any of your witnesses.** Even if you are unaware of deals that your witnesses have made with law enforcement agencies, such deals are *Brady* material and must be disclosed to the defense. *See, e.g., In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 896 (D.C. Cir. 1999). I presume that you have spoken with all of these agencies to ensure that they have not made any deals with or payments to any of your witnesses.

• **Examine the pre-sentence reports and probation files of all witnesses.**

> o Exculpatory information in a witness's probation file, including the witness's criminal record or personal information that could be used for impeachment, should be released to the defense. *See, e.g., United States v. Strifler*, 851 F.2d 1197, 1202 (9th Cir. 1988).

> o Pre-sentence reports (PSIs) of any government witnesses should be provided to the trial court for *in camera* examination to determine whether they contain *Brady* or *Giglio* material. *See, e.g., United States v. Jackson*, 978 F.2d 903, 909 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 2429 (1993).

• **If any government witnesses have been incarcerated, examine their department of corrections and/or bureau of prisons files.** *See, e.g., Carriger v. Stewart*, 132 F.3d 463, 479-80 (9th Cir. 1997) (*en banc*) ("The state had an obligation, before putting [a career burglar and six-time felon] on the stand, to obtain and review [his] corrections file, and to treat its contents in accordance with the requirements of *Brady* and *Giglio*.")

**4. Speak with any victim witness coordinators involved with the case.** *Commonwealth v. Liang*, 434 Mass. 131, 747 N.E.2d 112 (2001).

**5. If another government agency investigated the alleged offense, examine the files from that investigation or have the court examine them.** *See Pennsylvania v. Ritchie*, 480 U.S. 39, 57-60. (holding that defendant was entitled to have court conduct *in camera* examination of Child and Youth Services (CYS) file investigating defendant's alleged rape of his daughter to determine if it contained *Brady* material).

## B. SPECIFIC REQUESTS: EXCULPATORY INFORMATION

When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable. *See Bagley, supra.* The Defendant specifically requests the prosecution to provide defense counsel with any information or material that is exculpatory, favorable to the accused or which acts to impeach any witness for the State, including but not limited to the following:

1. Any evidence or statement which would tend to show that the Defendant did not commit the offense alleged in this cause.

2. The existence of a witness who would provide testimony favorable to the defense, even if learned from the witness during trial.

3. Any evidence or statement which is inconsistent with another witnesses' statement.

4. Any evidence or statement which would support the defense of necessity, provocation, or duress.

5. A list of other suspects and unindicted co-conspirators who were also under investigation for the present offense.

6. Any evidence or statement which would indicate that a person other than the Defendant committed or is criminally responsible for the offense alleged.

7. All statements made by any party or witness to this alleged offense in the possession of or within the knowledge of the State or any of his agents, including any law enforcement agency, whether such statements were written or oral, which might in any manner be material to the innocence of the Defendant or to the punishment, if any, to be set in this case.

## C. SPECIFIC REQUESTS: IMPEACHMENT INFORMATION

1. Information regarding State witnesses

    a. **Any information tending to show a State's witness's bias in favor of the State or against the Defendant or which otherwise impeaches a witness's testimony (including pending complaints against police officers and closed administrative or civil cases, whether resolved for or against the officer, that involve facts similar to those of this case).** *See United States v. Bagley,* 473 U.S. 667 (1985);

    b. **Any information indicating a witness's hostility towards or dislike of the Defendant.** *United States v. Sipe,* 388 F.3d 471 (5th Cir. 2004) (witness's dislike of defendant); *United States v. Sperling,* 726 F.2d 69 (2nd Cir. 1984) (tape of pre-trial conversation indicating that government witness was motivated by revenge).

c. All "consideration" or promises of "consideration" given to or on behalf of **all State's witnesses or expected or hoped for by said State witnesses.** *See Giglio v. United States,* 405 U.S. 150 (1972); *Banks v. Dretke,* 540 U.S. 668 (2004). Defendant requests all documents, records, memoranda, notes, or other records in any form reflecting "consideration" as set forth below. By "consideration," the Defendant refers to absolutely anything, whether bargained for or not, which arguably could be of value or use to a witness or to persons of concern to the witness, including, but not limited to, formal or informal, direct or indirect; leniency, favorable treatment or recommendations or other assistance with respect to any pending or potential criminal action, parole, probation, commutation of sentence, pardon, clemency, civil or administrative dispute; criminal, civil, or tax immunity grants of letters of non-prosecution; relief from forfeitures; payments of money, rewards or fees, witness fees and special witness fees; provision of food, clothing, shelter, or housing arrangements, transportation, legal services, employment or other benefits; placement in a "witness protection program"; informer status of the witness; and anything else which arguably could reveal an interest, motive, or bias in the witness in favor of the State or against the defense or act as an inducement to testify or to color testimony. **This consideration also includes:**

    i. **Favors from prosecution such as telephone calls, conjugal visits, etc.** *United States v. Salem,* 578 F.3d 682 (7th Cir. 2009)(witnesses' involvement in uncharged murder should have been disclosed as motive to testify to avoid murder charges); *See* El Rukn cases, *United States v. Andrews,* 824 F. Supp. 1273 (N.D. Ill. 1993); *United States v. Burnside,* 824 F. Supp. 1215 (N.D. Ill. 1993); *United States v. Boyd,* 883 F. Supp. 1227 (N.D. Ill. 1993).

    ii. **Promises as to witness' civil tax or administrative liability.** *United States v. Shaffer,* 789 F.2d 682 (9th Cir. 1986); *United States v. Wolfson,* 437 F.2d (2d Cir. 1970); *United States v. Dawes,* 1990 US Dist. LEXIS (D. Kan. Oct. 15).

    iii. **Help in forfeiture proceedings.** *United States v. Parness,* 408 F. Supp. 440 (S.D.N.Y. 1975).

d. **Any and all threats, express or implied, direct or indirect, or other coercion** made or directed against any witness, criminal prosecutions, investigations, or potential prosecutions pending or which could be brought against any witness, any probationary, parole, deferred prosecution or custodial status of any witness, and any civil, tax court, court of claims, administrative, or other pending or potential legal disputes or transactions with the State or over which the State has real, apparent or perceived influence.

e. All information in the possession of the government indicating that any State witness has had a **pending juvenile or criminal case** on or since the offense in this case; any State witness has had an arrest, guilty plea, trial, or sentencing on or since the date of the offense in the present case; any State witness has been on juvenile or criminal

parole or probation on or since the date of the offense; and any State witness now has or has had any other liberty interest which the witness could believe or could have believed might be favorably affected by State action. With respect to this information, I request cause numbers, dates and jurisdiction for all such cases. *See Davis v. Alaska,* 415 U.S. 508 (1974);

f. **Agreements/Deals with State witnesses**. *See, e.g., Giglio v. United States,* 405 U.S. 150, 154 (1972) (failure to disclose promise of immunity in exchange for testimony violates *Brady*); *United States v. Bagley,* 473 U.S. 667, 676, 682 (1985) (failure to disclose payment of $300 to two key State witnesses violates *Brady*); *Singh v. Prunty,* 142 F.3d 1157, 1161-63 (9th Cir. 1998) (failure to disclose that star witness had a very favorable deal with State to avoid a very serious charge is *Brady* violation); *United States v. Smith,* 77 F.3d 511, 513-16 (D.C. Cir. 1996) (failure to disclose a deal in which state charges were dismissed as part of a federal plea is *Brady* violation); *In Re Sealed Case No. 99-3096 (Brady Obligations),* 185 F.3d 887, 891, 896 (D.C. Cir. 1999) (remand to determine *Brady* information with instruction to district court to require the U.S. Attorney's Office to review the records in the possession of the prosecution team for evidence indicating that a government informant who provided information leading to the defendant's arrest had a deal with the prosecution, the D.C. Circuit observed that it is "irrelevant . . . that the requested records may have been in the possession of the Metropolitan Police Department, of the FBI or DEA, rather than the U.S. Attorney's Office.").

g. **Payments to investors and potential State witnesses**: *See, e.g., Mastracchio v. Vose,* 274 F.3d 590, 602-03 (1st Cir. 2001) (knowledge of Witness payments or favors made by the Witness Protection team is *Brady*); *In re Sealed Case (Brady Obligations),* 185 F.3d 887, 894 (D.C. Cir. 1999) (failure to disclose a cooperation agreement that included payments to a witness is *Brady* information).

h. **Witness's tax returns - especially for informant**. See Internal Revenue Code § 6103(i)(1)(2). *United States v. Lloyd,* 992 F.3d 348 (D.C. Cir. 1993)(remanded for hearing); *United States v. Wigoda,* 521 F.2d 1221 (7th Cir. 1975)(in camera inspection); *Johnson v. Sawyer,* 640 F. Supp. 1126 (D. Tex. 1986)(tax returns may be disclosed).

i. **Criminal history of investors and potential government witnesses**: All prior convictions and juvenile adjudications of all State witnesses and all persons identified in the offense report who could likely be called as a witness for the State. These records should include all arrests and convictions, whether as a juvenile or as an adult, including, but not limited to: all felony convictions and all misdemeanor convictions involving moral turpitude which have occurred in the last ten (10) years; all felony convictions and all misdemeanor convictions involving moral turpitude which have resulted in a suspended sentence which has not been set aside; all pleas of guilty or nolo contendere which resulted in dispositions of "deferred adjudication" or "deferred prosecution" or "deferred disposition"; all felony and misdemeanor cases that have

resulted in the witness being placed on probation, wherein the period of probation has not expired; all pending felony and misdemeanor offenses alleged to have been committed by the witness. The Defendant requests that the State be ordered to request the proper law enforcement authorities to obtain a full and complete criminal record of all such witnesses and reveal same to the Defendant, and the State should not be permitted to respond to this motion by advising the Court that the prosecutor does not have any indication in his file of any prior criminal record of such witnesses. *See, e.g., Crivens v. Roth*, 172 F.3d 991, 996-99 (7th Cir. 1999) (failure to disclose crimes committed by State witness is *Brady* even when government witness used aliases); *Carriger v. Stewart*, 132 F.3d 463, 480-82 (9th Cir. 1997) (failure to obtain or disclose Department of Corrections file that would have showed lengthy criminal history, and history of lying to police and blaming others for his own crimes is *Brady*).

j. **Misconduct by potential State witnesses**: All records and information revealing prior misconduct or bad acts attributed to any State witness. *See, e.g., United States v. Boyd*, 55 F.3d 239, 243-45 (7th Cir. 1995) (failure to disclose drug use and dealing by prosecution witness, and "continuous stream of unlawful favors" including phone privileges, presents, special visitors, provided by prosecution to witnesses is considered *Brady* material).

k. **All handle-bys for all potential State witnesses**: A report called a "handle-by" is created whenever a person contacts the police or when the police respond to a person's address. Handle-bys typically do not result in an arrest, but often include a police narrative. These are hidden records only available to law enforcement officers and are often used to gather information on suspects. The defense asks for handle-bys to be run on potential State witnesses as it may reveal why certain individuals are not being called as witnesses at trial.

l. **Bias of State witnesses**: *See, e.g., Schledwitz v. United States*, 169 F.3d 1003, 1014-15 (6th Cir. 1999) (*Brady* obligation for government to reveal witness portrayed as neutral and disinterested expert actually had been investigating defendant for years); *United States v. Abel*, 469 U.S. 45 (1984); *United States v. O'Connor*, 64 F.3d 355, 359-60 (8th Cir. 1995) (failure to disclose threats by one government witness against another and attempts by that same government witness to influence testimony of another government witness is *Brady*); *Reutter v. Solem*, 888 F.2d 578, 581-82 (8th Cir. 1989) (failure to inform defense that key witness had applied for commutation and was scheduled to appear before parole board in a few days is a *Brady* violation).

m. **Pecuniary or other interest of State witness**: *Bell v. Bell*, 460 F.3d 739 (6th Cir. 2006)(disclosure required where, although no express agreement between prosecution and witness, prosecution knew of witness' expectation for deal and fulfilled that expectation); *United States v. Blanco*, 391 F.3d 382 (9th Cir. 2004)(fact that investigating agency kept evidence of informant's immigration benefits from prosecution did not justify nondisclosure); *United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988)(information contained in witness' probation file should have been

disclosed because it related to his motives for informing as well as his tendency to overcompensate for problems and to lie).

n. **Kinship with person adverse to client.**

o. **Character of witness.** *United States v. Brumel-Alvarez*, 991 F.2d 1452 (9th Cir. 1992) (reversible error not to disclose government memorandum written to government agent highly critical of key government informant); *United States v. Bernal-Obeso, 989 F.2d 331* (9th Cir. 1993) (remand to determine whether government witness lied to DEA about his prior criminal record).

p. **Witness's use of alcohol or drugs.** *United States v. Robinson*, 583 F.3d 1265 (10th Cir. 2009)(CI's drug use was Brady based on CI's centrality to case); *King v. Ponte*, 717 F.2d 635 (1st Cir. 1983)(witness under heavy medication as treatment for unstable mental condition); *Williams v. Whitley*, 940 F.2d 132 (5th Cir. 1991)(sole eyewitness had been to methadone clinic within 2 hours of crime).

2. Inconsistent Statements

a. **The existence and identification of each occasion on which a State witness has testified before any court, grand jury, or other tribunal or body or otherwise officially narrated in relation to the Defendant, the investigation, or the facts of this case.**

b. **The existence and identification of each occasion on which each witness who has been or is now an informer, accomplice, co-conspirator, or expert that has testified before any court, grand jury, or other tribunal or body.**

c. **Statements of potential witnesses not called to testify**: *See, e.g., United States v. Frost*, 125 F.3d 346, 383-84 (6th Cir. 1997) (*Brady* violation when government does not disclose statement of potentially exculpatory witness, but instead tells defense that that witness would provide inculpatory information if called to testify).

d. **Contradictory or inconsistent statements**: *See, e.g., Brady v. Maryland*, 373 U.S. 83, 87 (1963) (failure to turn over statement by co-defendant that he had planned the killing, and that co-defendant had performed actual killing is violation of due process); *Kyles v. Whitley*, 514 U.S. 419 (1995) (failure to disclose inconsistent eyewitness and informant statements, and list of license numbers compiled by police that did not show Kyles' car in supermarket parking lot); *United States v. Hanna*, 55 F.3d 1456 (9th Cir. 1995)(discrepancies between law enforcement officers and reports and grand jury testimony); *United States v. Weintraub*, 871 F.2d 1257 (5th Cir. 1989).

e.  **Inconsistent notes**: Prosecutor and law enforcement notes from interviews with State witness: *See, e.g., United States v. Service Deli, Inc.*, 151 F.3d 938, 943-44 (9th Cir. 1998) (*Brady* obligation to turn over original notes from witness interview that contained three key pieces of impeachment information that showed that story had changed, change may have been brought about by threats of imprisonment, and witness had claimed to have suffered a stroke); *United States v. Pelullo*, 105 F.3d 117, 122-23 (3d Cir. 1997) (failure to disclose rough notes of FBI and IRS agents corroborating defendant's version of events and impeaching testimony of government agents).

f.  **Expert reports inconsistent with the State case or tends to support the defense case**: *See, e.g., United States v. Fairman*, 769 F.2d 386, 391 (7th Cir. 1985) (*Brady* violation when government failed to disclose ballistics worksheet that showed gun defendant was accused of firing was inoperable).

3.  <u>Information regarding law enforcement and prosecution</u>

a.  **Instructions to a State's witness by the police, a prosecutor, a victim-witness coordinator, or any agent of the State to not speak with defense counsel or to do so only in the presence of the State's counsel.** *See, e.g., Gregory v. United States*, 369 F. 2d 185 (D.C. Cir. 1966).

b.  **Instructions to a State's witness by law enforcement, a prosecutor, or any agent of the State to inquire about privileged communications between the Defendant and his lawyer.**

c.  **Personnel files, especially of testifying officers**: Any information on any pending or closed internal disciplinary investigation of police officers involved in the case, including, but not limited to, information regarding any administrative suspensions or civilian complaints. *See, e.g., United States v. Brooks*, 966 F.2d 1500, 1503-04 (D.C. Cir. 1992) (if specific request is made, prosecutor must search personnel records of police officer/witnesses to fulfill *Brady* obligations); *United States v. Muse*, 708 F.2d 513, 516 (10th Cir. 1983) (recognizing that prosecutor must produce *Brady* material in personnel files of government agents even if they are in possession of another agency.).

d.  **Presentence Reports of testifying witnesses**: *See, e.g., United States v. Strifler*, 851 F.2d 1197, 1202 (9th Cir. 1988) (information in probation file relevant to government witness credibility must be disclosed, and could not be deemed privileged by making it part of probation file); *United States v. Carreon*, 11 F.3d 1225, 1238 (5th Cir. 1994) (prosecution should allow trial court to conduct in camera review of presentence reports of government witnesses to determine whether they contain *Brady/Giglio* material).

e. **Police perjury in motions hearings**: *See, e.g., United States v. Cuffie*, 80 F.3d 514, 517-19 (D.C. Cir. 1996) (failure to disclose perjury by police officer during motion to seal proceeding is considered material *Brady* evidence relevant to impeachment ).

f. **Knowledge of police intimidation of witnesses**: *See, e.g., Guerra v. Johnson*, 90 F.3d 1075, 1078-80 (5th Cir. 1996) (failure to disclose police intimidation of key witnesses and information regarding suspect seen carrying murder weapon minutes after shooting is considered *Brady*).

g. **Facts or evidence indicating the unreliability of any State's witness.** *See, e.g. Mesarosh v. United States*, 352 U.S. 1 (1956);

h. **All information indicating that the mental state of any witness for the State is below normal or in any way abnormal.**

i. **All information that any witness for the State was under the influence of alcohol, narcotics, or any other drug, prescription or otherwise, at the time of the observations about which the witness will testify, or that the witness' faculties or observations were impaired in any way.**

j. **Evidence or information indicating the untruthfulness of a State's witness.** *See, e.g. Napue v. Illinois*, 360 U.S. 264 (1959);

k. **Evidence regarding any prior false accusations made by any State witness in this case, if any, on behalf of the complaining witness against the Defendant.** *See, e.g. Davis v. Alaska*, 415 U.S. 308, 318 (1984).

l. **Perjury by any State witness at any time, whether or not adjudicated and whether or not in connection with this case.** *See, e.g., Mooney v. Holohan*, 294 U.S. 103 (1935);

## D. SPECIFIC REQUESTS: IMPEACHMENT INFORMATION

1. **All information from victims or complainants who do not want to prosecute the Defendant or who have asked for leniency.**

2. **Mitigating evidence in aid of sentencing**: *See, e.g., Brady v. Maryland*, 373 U.S. 83, 87 (1963); ABA STANDARDS FOR CRIMINAL JUSTICE, PROSECUTION FUNCTION, § 3-6.2 (b) (3d Ed. 1993) Information Relevant to Sentencing ("The prosecutor should disclose to the defense and to the court at or prior to the sentencing all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.").

17

## E. REQUEST FOR IMMEDIATE DISCLOSURE

The Defendant requests the State to disclose any and all impeachment, exculpatory, and mitigating information as soon as the prosecutor learns of its existence. The Texas State Bar Rules also require a prosecutor in a criminal case to "make *timely disclosure* to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigate the offense, and, in connection with sentencing, disclose to the defense and the tribunal all unprivileged mitigating information known to the prosecutor...." Rule 3.09(d), Article 10, Section 9, State Bar Rules (emphasis added).

## V.

## TRE RULE 404

Pursuant to Rule 404(a) of the Texas Rules of Evidence, Defendant requests the State to give reasonable notice in advance of trial of its intent to introduce evidence of a pertinent character trait of the accused. *See Stitt v. State*, 102 S.W.3d 845, 849 (Tex.App. - Texarkana 2003, pet.ref'd) ("A pertinent character trait is one that relates to a trait involved in the offense charged or a defense raised."); *see also Santellan v. State*, 939 S.W.2d 155, 167 (Tex.Crim.App.1997).

Pursuant to Rule 404(b) of the Texas Rules of Evidence, Defendant requests the state to give reasonable notice in advance of trial of its intent to introduce evidence of other crimes, wrongs, or acts in an attempt to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The request for notice includes the discovery of all items that the State would be required to produce for the trial of each prior crime, wrong, or act in order to prove the Defendant committed the act beyond a reasonable doubt. *Ex Parte Varelas*, 45 S.W.3d 627, 631 (Tex.Crim.App.2001) (jury cannot consider extraneous act evidence unless they believe beyond a reasonable doubt that the

18

defendant committed that act); *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (all the facts which must exist in order to subject the Defendant to a legally prescribed punishment must be found by the jury); *Blakely v. Washington*, 124 S.Ct. 2531 (2004) (reaffirming a defendant's Sixth Amendment rights regarding burden of proving sentencing allegations).

Specifically, Defendant requests that the notice include the following:

-dates;
-locations;
-types or nature of the alleged crimes, wrongs, or acts involved;
-names of the individuals involved; and
-names of any courts involved.

*Rodgers v. State*, 111 S.W.3d 236 (Tex.App.- Texarkana, 2003).

## VI.
## TRE RULE 609

Pursuant to Rule 609(f) of the Texas Rules of Evidence, Defendant requests that the State give sufficient advance written notice of its intent to use evidence of a conviction to impeach the credibility of the following witness:

SYLVIA G. MARTINEZ

_____

_____

This request includes providing the discovery of any supporting documentation regarding such prior convictions.

## VII.

## ARTICLE 37.07

Pursuant to Article 37.07, Section 3(g) of the Texas Code of Criminal Procedure, Defendant requests that the State give reasonable notice of intent to introduce against the Defendant evidence of an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated suspended sentence as provided for in Article 37.07 Section 3(a) of the Code of Criminal Procedure. Defendant further requests written notice of the State's intent to introduce evidence of the prior criminal record of the Defendant, their general reputation, their character, an opinion regarding their character, and the circumstances of the offense for which they are being tried. Defendant also requests written notice of any evidence pertaining to an adjudication of delinquency of the grade of a felony or a misdemeanor punishable by confinement in jail.

Specifically, Defendant requests that the notice include the following: dates; locations; types or nature of the alleged crimes, wrongs, or acts involved; names of the individuals involved; and names of any courts involved. Notice of that intent is reasonable only if the notice includes the date on which and the county in which each alleged crime or bad act occurred and the name of each alleged victim of the crime or bad act.

The request for notice includes the discovery of all items that the State would be required to produce for the trial of each prior crime, wrong, or act in order to prove the Defendant committed the act beyond a reasonable doubt. This request includes providing the discovery of any supporting documentation regarding any prior convictions.

## VIII.

## WITNESS LIST

Defendant requests that at least thirty (30) days before the commencement of trial the State provide the name, address and telephone number of each person whom the State intends to call as a witness at any stage of the trial. Notice of the State's witnesses shall be given upon request. *Young v. State*, 547 S.W.2d 23, 27 (Tex. Crim. App. 1977); *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993), cert. denied, 512 U.S. 1246 (1994) ("It is established that notice of the State's intended witnesses should be given upon proper request.").

This request encompasses those persons whom the State reasonably anticipates may testify during its case-in-chief, case-in-rebuttal, or, in the event of a conviction, at the punishment stage.

## IX.

## TIME AND MANNER FOR DISCLOSURE

Defendant makes these requests alleging that notice and opportunity to investigate the proposed evidence is an essential part of Defendant's right to a fair trial, effective representation by counsel, and constitutional due process pursuant to provisions of Article I, Sections 10 and 19 of the Constitution of the State of Texas, and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. The request is made and "as soon as practicable" is defined for the State to produce the requested notice and information no later than thirty (30) days upon receipt of this request. Defendant requests that if any above-referenced materials cannot be produced within thirty (30) days because it is not "practicable," the State should provide a description of the item and the anticipated date of production.

The request is made for the State to provide written notice and discovery to counsel for the Defendant via electronic mail to:

vanbruntlaw@live.com

21

lawoffice1840@gmail.com

If at any time before, during or after trial the State discovers any additional document, item, or information required to be disclosed pursuant to Article 39.14(h), Defendant requests that the State promptly disclose the existence of the document, item or information to undersigned counsel.

Respectfully submitted,

LAW OFFICE OF CHAD VAN BRUNT
310 S. St. Mary's Street
Suite 1840 - Tower Life Bldg.
San Antonio, Texas 78205
Tel: 210-399-8669
Fax: 210-568-4927

By:_____
Chad Van Brunt
State Bar No. 24070784
Attorney for SYLVIA G. MARTINEZ

## CERTIFICATE OF TIMELY REQUEST

I hereby certify that a copy of the above and foregoing Defendant's Request for Production of Discovery has been served upon the Bexar County Attorney's Office, via hand delivery, this the 20th day of March, 2015.

_____
Chad Van Brunt

22

**EXHIBIT A:**
PRIVILEGE LOG

| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | 187TH JUDICIAL DISTRICT |
| | § | |
| SYLVIA G. MARTINEZ | § | BEXAR COUNTY, TEXAS |

## STATE'S PRIVILEGE LOG

COMES NOW, the State of Texas, by and through the District Attorney of Bexar County, Texas, and pursuant to Article 39.14(c) of the Texas Code of Criminal Procedure would inform the defendant that a portion of the document, item, or information has been withheld or redacted:

| ITEM | INFORMATION REDACTED | INFORMATION WITHHELD |
| --- | --- | --- |
| | | |
| **OFFENSE REPORTS** | | |
| ☐ Offense Report(s): | | |
| | | |
| Offense Report Number: | | |
| Number of pages: | | |
| Date printed: | | |
| | | |
| ☐ CAD report: | | |
| ☐ Search Warrant(s): | | |
| ☐ Collision Report | | |
| | | |
| **STATEMENTS** | | |
| Defendant's Statement | | |
| ☐ Written | | |
| ☐ Video | | |
| ☐ Audio Only | | |
| | | |
| | | |
| Witness Statement of: | | |
| | | |
| | | |
| ☐ Written | | |
| ☐ Video | | |
| ☐ Audio Only | | |
| | | |
| **DOCUMENTS** | | |

| | | |
|---|---|---|
| ☐ Medical Records | | |
| ☐ Defendant's | | |
| ☐ Victim(s)' | | |
| ☐ Other | | |
| ☐ Business Record(s) | | |
| ☐ Maintenance Record(s) | | |
| ☐ Phone Record(s) | | |
| ☐ Text Message(s) | | |
| ☐ Restitution Documentation | | |
| ☐ Billing Statement | | |
| ☐ Receipt(s) | | |
| ☐ Other | | |
| | | |
| **AUDIO RECORDINGS** | | |
| ☐ 911 Call(s): | | |
| ☐ Jail Calls | | |
| ☐ Other: | | |
| | | |
| **VIDEOS** | | |
| ☐ In-Car | | |
| ☐ Surveillance | | |
| ☐ Other: | | |
| | | |
| **LAB TESTS** | | |
| ☐ Breath | | |
| ☐ Blood | | |
| ☐ Toxicology | | |
| ☐ Prints: | | |
| ☐ Other: | | |
| | | |
| **OTHER EVIDENCE** | | |
| ☐ Other | | |

Respectfully submitted,



By:_____
    Prosecuting Attorney

Cause NO. 2014 CR 1384
NM 263143

THE STATE OF TEXAS

VS.

Dulcia Martinez

IN THE DISTRICT COURT

187th JUDICIAL DISTRICT

BEXAR COUNTY, TEXAS

CRT

MOTION TO QUASH INDICTMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Come now Dulcia Martinez , Defendant in the above styled and numbered cause and files this Motion to Quash Indictment and in support of said motion would show the Court the following:

I.

The following reasons show cause as to why the indictment brought against Defendant in this cause should be quashed:

1. The indictment does not set forth the offense in plain and intelligible words, but is vague, indefinite and incomprehensible;
2. The indictment does not set forth facts sufficient to constitute an offense against the laws of the State of Texas;
3. The indictment fails to allege all the essential acts and omissions by Defendant necessary to constitute a violation of Section _____ of the Texas Penal/Health & Safety Code;
4. The indictment does not follow statutory language;
5. The indictment is insufficient in law in that it is so vague and indefinite, that if Defendant were found guilty, a judgment based upon said indictment would not be such as could be used as a plea in bar of a subsequent prosecution for the same offense;
6. The indictment is insufficient in law for the reason the offense is charged inferentially and by way of recital and argument;
7. The indictment is insufficient in law in that it makes allegations of the offense by means of recital, argument and opinion, and states conclusions of law.

II.

illegal arrest (See Wong Sun vs. State, 83 S Ct 407) and therefore any charges resulting against Defendant be dismissed.

WHEREFORE, PREMISES CONSIDERED, Defendant prays the charges and cause against Defendant be dismissed with prejudice and the Defendant be released from custody forthwith.

Respectfully submitted,

Attorney for Defendant                    Defendant

## CERTIFICATE OF SERVICE

I, hereby certify that on this the 28 day of March, 2015, A true and correct copy of the above and foregoing Motion to Dismiss – Insufficient Evidence was transmitted to the office of the Bexar County District Attorney, Criminal Justice Center, 101 W. Nueva, San Antonio, Texas 78205

Defendant

## ORDER

On this the ____ of _____, _____, came on to be heard Defendant's Motion to Dismiss – Insufficient Evidence and said motion is hereby

( ) GRANTED          ( ) DENIED

Signed this ____, day of _____, _____.

_____
Judge Presiding

## UNSWORN DECLARATION BY INMATE

I, _Sylvia Martinez_ , SID 216016

Being presently incarcerated in the Bexar County Adult

Detention Center, San Antonio, Texas declare under Penalty of

Perjury that the foregoing instrument is true and correct.

Signed on this the 28 day of _March_ , 2015

_Sylvia Martinez_
Defendant

Sylvia Montemayor
1413-312
300 N Comal
San Antonio, TX 78207

District Clerk's Office
Criminal Section
101 W. Nueva, Ste. 217
San Antonio, Texas 78205
ATTN: 127th District Court

FIRST-CLASS MAIL
ZIP 78205
041L11302075
$00.00¢
03/01/2016

Cause NO. CR1384 2014

THE STATE OF TEXAS　　　　　IN THE DISTRICT COURT

vs.　　　　　　　　　　　　　187 JUDICIAL DISTRICT

Sylvia Martinez

BEXAR COUNTY, TEXAS

MOTION TO QUASH AND SEVER

TO THE HONORABLE JUDGE OF SAID COURT:

Come now Sylvia Martinez , Defendant in the above styled and numbered cause and moves the Court to strike from the Petition of Indictment paragraph(s) Prostitution 3 or More Prior, or separate the charges alleged against Defendant and order that they be tried separately; and in support of said motion would show the Court the following:

I.

The trying of multiple cases at the same time or the listing of separate charges in the indictment would be highly prejudicial to Defendant and would deprive him of his right to a fair trial guaranteed to him by the United States Constitution.

II.

The charges against Defendant arose out of two (or more) separate incidents and have no relevance to each other.

III.

There is no way for Defendant to adequately prepare a defense against multiple charges and to not be adequately prepared would deny Defendant's right to a fair trial on each charge.

The Court is without jurisdiction over the person or subject matter.

## III.

The indictment does not comply with Article 1, Section 10 of the Constitution of the State of Texas or with Article 21.01 and 31.02 of the Texas Code of Criminal Procedure in that it does not properly notify Defendant of the nature and cause of the accusation.

WHEREFORE, PREMISES CONSIDERED, Defendant prays the Court quash the indictment in this cause of action and that Defendant be released from custody forthwith.

Respectfully submitted,

_Van Brunt Chad_

Attorney for Defendant

_Sylvia Martinez_

Defendant

## CERTIFICATE OF SERVICE

I, hereby certify that on this the __16__ day of __March__, __15__, a true and correct copy of the above and foregoing Motion to Quash Indictment was transmitted to office of the Bexar County District Attorney, Criminal Justice Center, 101 W. Nueva, San Antonio, Texas 78205

_Sylvia Martinez_

Defendant

## ORDER

On this the ____ of _____, ____, came on to be heard Defendant's Motion to Quash Indictment and said motion is hereby

( ) GRANTED          ( ) DENIED

Signed this ____, day of _____, ____.

_____
Judge Presiding

## UNSWORN DECLARATION BY INMATE

I, *Sylvia Martinez*, SID 216016

Being presently incarcerated in the Bexar County Adult

Detention Center, San Antonio, Texas declare under Penalty of

Perjury that the foregoing instrument is true and correct.

Signed on this the 16 day of March, 15.

_____
Defendant

Sylvia Martinez
216016 4B-317
200 N Comal
San Antonio, TX 78207

District Clerk's Office
Criminal Section
101 W. Nueva, Ste. 217
San Antonio, Texas 78205
ATTN: 144th District Court

Legal Mail

08/31/2015
ZIP 78205
$00.00

NO. 2014CR1384

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| | § | |
| | § | 187th JUDICIAL DISTRICT |
| | § | |
| SYLVIA MARTINEZ | § | BEXAR COUNTY, TEXAS |

---

## PRETRIAL WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM DOUBLE JEOPARDY

---

**TO THE HONORABLE JUDGE OF THIS COURT:**

COMES NOW, Sylvia Martinez, Applicant herein and Defendant in Cause No. 2014CR1384 pending in this Court, by and through undersigned counsel, and respectfully submits this pretrial writ of habeas corpus seeking relief from double jeopardy pursuant to the Fifth and Four- teenth Amendments to the United States Constitution, and Article I §§ 10, 13, and 14 of the Texas Constitution. In support of the same, Applicant would show this Honorable Court as follows:

### I. The Instant Prosecution of Applicant is Barred by Double Jeopardy both under the United States and Texas Constitutions.

Sylvia Martinez is charged with the State Jail Felony offense of prostitution 3 or more. Al- though the facts and circumstances of her arrest are tangential to the arguments herein, it is sufficient to briefly aver to the State's allegations. According to charges, Sylvia Martinez, loitered near a public roadway, where she encountered an undercover vice officer working for the San Antonio Police Department. She entered the vice officer's vehicle. Once the vice officer allegedly determined that his verbal exchange with her was sufficient to make a case for prostitution, the officer signaled to his uniformed partner to initiate a traffic stop. Upon arrival, the uniformed officer separated Ms. Martinez from the undercover policeman and issued her citations for Loitering in a Public Roadway for the Purpose of Prostitution. Ms. Martinez was

34

subsequently indicted by a Bexar County Grand Jury for violating § 43.02 of the Texas Penal Code, which was enhanced to a state jail felony baased upon her prior convictions for the same violation. On May 23, 2014, Ms. Martinez plead nolo contendere to the Class C offense of Loitering for Prostitution, San Antonio Code of Ordinances § 21-25(c), in cause number B1523240-01 in the San Antonio Municipal Court. The actions for which she was convicted in that cause arose out of the same transaction as cause for which she is indicted in this court.

### a) Applicable Authority

The The United States Constitution and the Texas Constitution prohibit successive prose- cutions and successive punishments for the same offense. U.S. Const. Amend. 5. ("Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."); Tex. Const. Art. I, § 14 ("No person, for the same offense, shall be twice put in jeopardy of life or liberty."). This fundamental right assumes many different forms, but the instant case concerns itself only with whether a defendant suffers double jeopardy when she is prosecuted or con- victed of more offenses than intended by the legislature for a given act or transaction. *Mis- souri v. Hunter,* 459 U.S. 359, 366 (1983). The most commonly applied test for this question was established in 1932, when the Supreme Court of the United States handed down its deci- sion in *Blockburger v. United States*:

> A single act may be an offense against two statutes; and if each statute requires
> proof of an additional fact which the other does not, an acquittal or conviction

under either statute does not exempt the defendant from prosecution and punishment under th other.

*Blockburger v. United States,* 284 U.S. 299, 304 (1932) (quoting *Morey v. Commonwealth,* 108 Mass. 433, (MA 1871)). Were this the only guidance for courts on the subject of double jeopardy, the clause could be effectively read out of the Fifth Amendment and Article I, § 14. The Legislature could circumvent the citizenry's protection from double jeopardy by simply criminalizing the loading of the firearm, the cocking of the revolver, the aiming of the firearm, and the squeeze of the trigger; prosecuting the defendant for murder in each instance until a conviction is obtained, citing *Blockburger* each time a jury is summoned to justify the subsequent prosecutions. Fortunately, *Blockburger* is not a black letter rule of law, but a tool of statutory construction, and it is not the exclusive tool for the task:

> In the multiple punishments context, ***the Blockburger test is simply a rule of statutory construction,*** which is useful in attempting to ascertain legislative intent. *Hunter,* 459 U.S. at 366-368. Hence, the Supreme Court has concluded that the *Blockburger* test cannot negate a clearly expressed legislative intent to impose multiple punishments . . . ***The Blockburger test's status a a 'mere rule of statutory construction' raises an inverse conclusion as well: the Blockburger test cannot authorize two punishments where the legislature clearly intended only one.*** And, that status raises the possibility that ***there exist other rules of statutory construction that may be employed*** to help ascertain whether a legislature intended multiple punishments.

*Ervin v. State,* 991 S.W.2d 804, 807 (Tex. Crim. App. 1999). In *Ervin,* for example, the Texas Court of Criminal Appeals addressed whether Manslaughter and Intoxication Manslaughter were two separate offenses for double jeopardy purposes, and ultimately concluded that a

conviction for one would bar prosecution for the other. *Id* at 815. In so holding, the Court set out a nonexclusive list of factors to consider:

> Whether the offenses provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are named similarly, whether the offenses have common punishment ranges, whether the offenses have a common focus (i.e. whether the "gravamen" of the offense is the same) and whether that common focus tends to indicate a single instance of conduct, whether the elements that differ between the offenses can be considered the 'same' under an imputed theory of liability which would result in the offenses being considered the same under *Blockburger* (i.e. a liberalized *Blockburger* standard utilizing imputed elements), and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes.

*Id* at 814. This approach is consistent with the Supreme Court of the United State's opinion in *Dixon v. United States,* 509 U.S. 688, 704-705 (1993), for several reasons. First, although the *Ervin* court attempts to limit its holding to "multiple conviction" cases arising out of the same prosecution, the *Dixon* court plainly obliterated any distinction between the two for the purposes of "same offense" analysis. *Dixon,* 509 U.S. at 704 ("It is embarassing to assert that the single term "same offence" (the words of the Fifth Amendment at issue here) has two different meanings."). Second, the *Ervin* court explicitly acknowledges that *Dixon* overruled an alternative test - the "same conduct" test - when it reaffirmed *Blockburger*; only a few paragraphs later, the Court adopted the multi-tool approach to statutory construction Texas still applies today. This suggests two important principles: (1) the Texas Constitution requires a more liberated version of *Blockburger* than that required by the Fifth Amendment and (2) that the Supreme Court's rejection of the "same conduct" test (using previously prosecuted conduct to prove an essential element of the subject offense) does not mean that *Blockburger*

should be construed only in the simplest possible terms.

Additionally, it is well settled that a conviction for attempting to commit an offense cannot coexist with a conviction for a completed offense. It is also well settled that when a defendant violates "separate offenses" in a single, continuing act should be subsumed into one another, culminating in a single criminal conviction:

> It is clear that sexual exploitation of children is of great concern to the legislature. The offenses enumerated by the legislature cover a range of deviant sexual conduct, beginning with exposure and continuing though sexual contact to penetration and including incest and child prostitution. The scheme encompasses escalation of abuse; no matter where in the range the perpetrator stops, the offense is complete at that point. *That is not to say that every offense in the range can in all cases be prosecuted as a separate offense. While it is clear from the plain language of the various statutes that the legislature intended harsh penalties for sexual abuse of children, there is nothing in the language to suggest that it intended to authorize "stop- action" prosecution.* Just as a conviction for a completed offense bars prosecution for an attempt to commit the same offense, a conviction for an offense set out in § 3.03 bars conviction for conduct that, on the facts of the case, is demonstrably part of the commission of the greater offense. *For example, indecency by genital exposure of oneself in the course of manual penetration of another are separate offenses, while penile contact with mouth, genitals, or anus in the course of penile penetration will be subsumed. Thus, indecency by exposure may or may not be a part of sexual assault or indecency by contact, depending on the facts of the case.*

*Patterson v. State,* 152 S.W.3d 88, 91-92 (Tex. Crim. App. 2004) (emphasis added).

The fact that Applicant's underlying conviction, upon which her double jeopardy claim rests, is a municipal ordinance violation does not preclude relief. Because the power

of the municipality to enact ordinances springs from the same source of authority as laws promul-gated by the State government - the Texas Legislature - the dual sovereignty exception that permits successive state and federal prosecutions for the same offense is inapplicable. *Benard v. State*, 481 S.W.2d 427, 429 (Tex. Crim. App. 1972) (citing *Waller v. Florida*, 379 U.S. 387, 393 (1970)).

**a) Application and Argument.**

Applicant submits that her conviction in the municipal court of San Antonio for loitering for the purpose of prostitution bars her prosecution in the case at bar. Both offenses stem from the same transaction, and taken together, are incidents of the same criminal act. A careful examination of the *Ervin* Factors, recited supra, evidence this fact.

First, although not contained in the same code, the offenses are strikingly similar in their statutory structure. The Texas Penal Code prohibits anyone from offering, agreeing, or engaging in sexual intercourse or deviant sexual intercourse for a fee. Tex. Penal Code § 43.02. The San Antonio city ordinance at issue here similarly criminalizes these acts, relying on the Texas Penal Code definition to fill in the blanks. San Antonio Code of Ordinances § 21-25(b). It then prohibits "loiter[ing] in or near any street or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting, or procuring another to commit prostitution." San Antonio Code of Ordinances § 21-25(c)(1). It further qualifies the offense by requiring the arresting officer to afford the perpetrator an opportunity to explain her conduct. San Antonio Code of Ordinances § 21-25(c)(3). This statutory rubric is so similar to the Texas Penal Code's prohibitions as to

manifest an identical legislative purpose: to arrest and punish people engaged in prostitution. This triggers several of the *Ervin* factors: Similar statutory language, similar statutory names, and a focus indicating a singular course of conduct.

Second, the two statutes share a common focus. To violate the municipal ordinance, the actor must (1) be in a public place or near a street; (2) manifesting her intent to induce, entice, solicit, or procure prostitution; and (3) must fail to give an adequate explanation for her conduct suggesting something other than prostitution. These elements could be simplified to mean "communicating an 'offer' or 'agreement' to engage in prostitution". Nothing in the text of the Texas Penal Code requires a *verbal* offer or an agreement to engage in prostitution. Agreements in criminal law are quite often tacit in nature and inferred from the circumstances; this forms the body of conspiracy law, for example. If someone intent on working as a prostitute sees a potential customer, and steps out into the street to make a suggestive offer or to accept the customer's suggestive offer by means of gesture, provocative dress, or simply eye contact, the actor has triggered the gravamen of the offense in two separate statutes.

Third, this common focus indicates that the elements of the two offenses are the same under an "imputed theory of liability." The language of the ordinance simply rephrases the same elements listed in the Texas Penal Code. "Offer" and "Entice," "Procure" and "Agree" - these terms are virtually interchangeable. The degrees to which they differ are matters of proof rather than alternative manner and means. *Cf. State v. Barbernell,* 257 S.W.3d 248 (Tex. Crim. App. 2008) (distinguishing between alternative methods of proving one element as opposed to distinct manner and means for committing an offense).

At best, the municipal ordinance at issue here amounts to an attempt to commit prostitution, which would similarly prove a bar to the instant prosecution. In certain cases even if the acts defined as "loitering for prostitution" under the statute were not identical to the acts constituting an offer, agreement, or financially compensated sexual act, the conduct would undoubtedly amount to an act done with specific intent to commit prostitution, amounting to more than mere preparation, that tends to effect the commission of the offense. Tex. Penal Code § 15.01. Furthermore, as alleged in the case at bar, the act of loitering for prostitution occurred solely to get into the undercover officer's vehicle to finalize the terms of the transaction. The approach of penalizing both that act and the resulting finalization of the terms as two separate offenses falls squarely within the concept of a subsumed, "stop-gap" prosecution disparaged by the Court of Criminal Appeals in *Patterson, supra.*

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED,** the Applicant prays that for the above mentioned reasons, the Court grant this Writ of Habeas, find that the Applicant is charged with a violation of double jeopardy, set aside the indictment in the above-numbered and entitled cause and for such other relief that this Honorable Court deems just and right.

Respectfully Submitted,

Chad Van Brunt
LAW OFFICE OF CHAD VAN BRUNT
310 S. St. Mary's Street
Tower Life Bldg. – Suite 1840
San Antonio, TX 78205
Tel: (210) 399-8669

41

Fax: (210) 568-4927

By: _____

CHAD VAN BRUNT
State Bar No. 24070784
Attorney for Sylvia Martinez

## CERTIFICATE OF SERVICE

This is to certify that on __6 / 6_____, 2015 a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Bexar County, by hand delivery.

_____

CHAD VAN BRUNT



NO. 2014CR1384

| EX PARTE | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| | § | 187th JUDICIAL DISTRICT |
| | § | |
| SYLVIA MARTINEZ | § | BEXAR COUNTY, TEXAS |

## ORDER

*Request for issuance of writ denied*

On the _____ day of _____, 2015, came on to be heard applicant's pre-trial writ of habeas corpus seeking relief from double jeopardy. Having duly considered the merits of the same, and the arguments and authorities of counsel, the applicant's relief is hereby:

_____ GRANTED

And it is therefore ORDERED that the indictment in cause number 2014CR1384 is dismissed with prejudice.

_____ DENIED

To which Applicant duly excepts.

_____
PRESIDING JUDGE

Cause no. 2014 CR 1384

| | | |
|---|---|---|
| State of Texas | § | In Th~~U~~ JUN 9 2015 Court |
| v | § | 187th District Clerk, Bexar County, Texas District |
| | § | |
| Sylvia Martinez | § | Bexar County, Texas |

FILED _____ O'CLOCK ____ M

DONNA KAY M'KINNEY

By _____ DEPUTY

## ~~Pretrial~~ Motion For Continuance

To the Honorable Judge,

Now Comes, Sylvia Martinez, by and through undersigned counsel and repeetfully moves this court to contine the trial of this cause from its current setting of June 8, 2015 and shows as follows:

1. On, ~~course~~ June 5, 2015, counsel for Defendant prepared and filed a pretrial Writ of Habeas Corpus claiming that continued prosecution of this case →

is barred by Double Jeopardy.

2. Counsel for Defendant focused his defense strategy on preparing for and litigating the Writ.

3. Counsel for Defense has not adequately prepared and asks for a continuance to have the Writ heard and to properly prepare a defense for ~~the~~ Defendant.

4. This motion is not for the purposes of delay, but so that Defendant's counsel will effectively represent Defendant.

Prayer

Where for premises considered ~~the~~ Defendant asks this Court to grant this motion and continue this cause at a date when Counsel for Defendant will be properly prepared.

Respectfully Submitted,

Chad Van Brunt
Bar # 24070784

State of Texas ξ

County of Bexar ξ

Affidavit.

"I am Chad Van Brunt, I am over 18 and capable of making this affidavit.

"I swear that the facts in the foregoing Motion are True to the best of my knowledge"

JANET NICOLE GARCIA
Notary Public, State of Texas
My Commission Expires
September 06, 2017

Chad Van Brunt

Janet Nicole Garcia     4/8/2015
Notary Public



Cause no. 2014 CR 1384

State of Texas      §      In the District Court

V.      §      187th Judicial District

     §

Sylvia Martinez      §      Bexar County, Texas

Order

On June 8, 2015 Came on to be considered Defendant's Motion for Continuance. After consideration Said motion is

___ Granted / Case to be rescheduled to ___ @ 19 _____ 2015

___ Denied

_____
Judge Presiding

No. 04-15-00348-CR

IN THE COURT OF APPEALS FOR THE
FOURTH DISTRICT OF TEXAS
SAN ANTONIO, TEXAS

FILED
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY

2015 JUN 26  P 4: 58

DEPUTY
BY

IN RE:

SYLVIA MARTINEZ,

Relator

FROM THE 187TH DISTRICT COURT
OF BEXAR COUNTY, TEXAS
CAUSE NO. 2014-CR-1384

RESPONSE TO PETITION FOR WRIT OF MANDAMUS

JUDGE STEVEN C. HILBIG
187th District Court
Bexar County, Texas,

Respondent

i

# IDENTITY OF PARTIES AND COUNSEL

Respondent:

Judge Steven C. Hilbig

Counsel for Respondent:

Melissa Barlow Fischer
State Bar No. 01758200
General Administrative Counsel
Criminal District Court Administration
Paul Elizondo Tower
101 W. Nueva, Suite 301
San Antonio, Texas 78205


Relator:

Sylvia Martinez

Counsel for Relator:

Chad P. Van Brunt
State Bar No. 24070784
310 S. St. Mary's Street
Suite 1840 – Tower Life
San Antonio, Texas 78205

Angela Moore
State Bar No. 14320110
310 S. St. Mary's Street
Suite 1840 – Tower Life
San Antonio, Texas 78205

# INDEX OF AUTHORITIES

**PAGE**

## Cases

*Blanton v. State,* 369 S.W.3d 894, 903 (Tex.Crim.App.2012) .......................................... 6

*Buntion v. Harmon,* 827 S.W.2d 945, 947 n. 2 (Tex.Crim.App.1992)(en banc) ................ 2

*Ex Parte Carter,* 849 S.W.2d 410, 412 (Tex.App.-San Antonio 1993, pet. ref'd) (Onion,

J.) ........................................................................................................................... 3, 8

*Ex parte Crawford,* 506 S.W.2d 920 (Tex. Civ. App. 1974) ............................................. 8

*Ex Parte Gaither,* 387 S.W.3d 643, 648 (Tex. Crim. App. 2012) ..................................... 6

*Ex parte Peterson,* 117 S.W.3d 804, 819 (Tex.Crim.App.2003) ..................................... 2,

*Ex parte Pipkin,* 935 S.W.2d 213, 215 (Tex. App. 1996) ................................................. 3

*Flores v. Flores,* 116 S.W.3d 870, 876 (Tex. App. 2003) ................................................ 6

*In re Altschul,* 236 S.W.3d 453, 456 (Tex. App. 2007) .................................................... 5

*In re Davis,* 990 S.W.2d 455, 457 (Tex. App. 1999) ........................................................ 3

*In re Piper,* 105 S.W.3d 107, 110 (Tex. App. 2003) ..................................................... 3, 5

*In re Reed,* 137 S.W.3d 676, 678 (Tex. App. 2004). ................................................. 2, 5, 8

*King Fisher Marine Serv., L.P. v. Tamez,* 443 S.W.3d 838, 843 (Tex. 2014)          6

*Lutheran Soc. Serv., Inc. v. Meyers,* 460 S.W.2d 887, 889 (Tex. 1970) ........................... 3

*Nichlos v. State,* 255 S.W.2d 522, 526 (Tex. Crim. 1952) ............................................... 5

*Smith v. Flack,* 728 S.W.2d 784, 792 (Tex.Crim.App.1987) ............................................ 3

*State ex rel. Curry v. Gray,* 726 S.W.2d 125, 128 (Tex.Crim.App.1987) ..................... 2, 4

*State ex rel. Hill v. Court of Appeals for Fifth Dist.,* 67 S.W.3d 177, 181 (Tex. Crim.

App. 2001) ................................................................................................................. 2

*Stotts v. Wisser,* 894 S.W.2d 366, 367 (Tex.Crim.App.1995) (orig. proceeding) ............. 2

*Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) .......................................................... 3

*Williams v. Harmon*, 788 S.W.2d 192, 193 (Tex. App. 1990) ............................................. 5

## **Statutes**

Tex. Code Crim. Proc. Ann. art. 11.05 ............................................................................ 9

Tex. Code Crim. Proc. Ann. art. 11.10. ........................................................................... 8

Tex. Code Crim. Proc. Ann. art. 11.14 ............................................................................ 11

# PROCEDURAL POSTURE

Relator, Sylvia Martinez, is charged with committing prostitution, in violation of § 43.02 of the Texas Penal Code. Relator was indicted on February 26, 2014. On March 18, 2015, Relator was arraigned and defense counsel was appointed. There have been three trial settings in this case. The first occurred on April 17, 2015. Relator's case was reset. The second trial setting was on May 15, 2015. Relator's case was again reset. Relator's third trial setting was on June 5, 2015, and the case was sent to trial. On this very same day, defense counsel filed its pretrial application for writ of habeas corpus.

On Monday, June 8, 2015, Respondent denied Relator's request for issuance of the writ of habeas corpus. Rep. R. at 3. Respondent never engaged the merits of the writ. Respondent denied issuance of the writ, and not relief. During that same proceeding, Respondent granted Relator's Motion for Continuance and reset the matter for June 22, 2015, thereby delaying the trial's commencement for two full weeks. On June 17, 2015, this Court granted Relator's Request for Emergency Relief and ordered the parties to file responses to the petition for writ of mandamus.

1

## ARGUMENTS IN RESPONSE TO RELATOR'S WRIT OF MANDAMUS

**I.     The Fourth Court of Appeals Should Deny Mandamus Because Respondent Had No Duty to Issue the Writ of Habeas Corpus and There Are Adequate Remedies At Law Available to Respondent**

The Texas Court of Appeals reviews a trial court's refusal to issue an application for writ of habeas corpus under the abuse of discretion standard. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex.Crim.App. 2003). The appellate court must review the evidence in the light most favorable to the trial court's ruling and must uphold the trial court's ruling absent an abuse of discretion. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex.Crim.App. 2003).

Under long-established precedent, this Court will not grant mandamus unless the relator proves two elements: first, that respondent failed to perform a ministerial duty imposed by law and, second, that there is no other adequate remedy at law available to him. *In re Reed*, 137 S.W.3d 676, 678 (Tex. App. 2004).

In order to establish the first element, relator must show a "clear right to relief sought." *Stotts v. Wisser*, 894 S.W.2d 366, 367 (Tex.Crim.App.1995) (orig. proceeding). In criminal cases, this "clear right to relief" has been couched in terms of the Respondent owing a "ministerial," and not discretionary, duty. *Buntion v. Harmon*, 827 S.W.2d 945, 947 n. 2 (Tex.Crim.App.1992)(en banc). A ministerial duty is one which is clearly fixed and required by law. *State ex rel. Curry v. Gray*, 726 S.W.2d 125, 128 (Tex.Crim.App.1987). It is unequivocal, unconditional, and present. *Id.* The duty must be one that is so clearly spelled out by law that nothing is left to the exercise of discretion or judgment. *State ex rel. Hill v. Court of Appeals for Fifth Dist.*, 67 S.W.3d 177, 181 (Tex. Crim. App. 2001).

In order to satisfy the second requirement, Relator must establish that he has no other adequate remedy short of mandamus. *In re Piper*, 105 S.W.3d 107, 110 (Tex. App. 2003). The purpose of this second requirement is "[t]o assure that a relator will not prematurely apply for extraordinary relief via writ of mandamus." *Smith v. Flack*, 728 S.W.2d 784, 792 (Tex.Crim.App.1987).

### A. Whether a trial court issues a writ of habeas corpus is a matter of discretion.

In *Ex parte Carter*, this Court restated Texas black letter law concerning the nature of a trial court's decision on whether to issue a habeas writ. The rule is bright-line and unequivocal: "Whether a trial court issues a writ of habeas corpus is a matter of discretion.[1] The trial court has no duty to grant a hearing on an application for writ of habeas corpus.[2]" *Ex Parte Carter*, 849 S.W.2d 410, 412 (Tex.App.-San Antonio 1993, pet. ref'd) (Onion, J.). This Court should adhere to *Carter* and deny mandamus.

*Carter*'s facts are virtually identical to those of the instant case. There, Carter filed an application for pretrial writ of habeas corpus, asserting that a trial on the merits would subject him to double jeopardy. *Id.* The 290th District Court denied the application. *Id.* Carter then filed a motion to reconsider, which the 290th District Court again denied. *Id.* Carter appealed, and this Court dismissed. *Id.* In its opinion, this Court emphasized that, although the 290th District Court held a hearing on whether to issue the writ, the trial court never addressed on the writ's merits. *Id.* The trial court denied the writ, it did not deny relief. *Id.* Here, Relator, like Carter, filed a pretrial writ of habeas corpus, claiming a

---

[1] *See also Ex parte Fowler*, 573 S.W.2d 241, 244 (Tex.Crim.App.1978), *overruled on other grounds, Ex parte Spaulding*, 612 S.W.2d 509 (Tex.Crim.App.1981); *Williams v. Harmon*, 788 S.W.2d 192, 193 (Tex.App.—Houston [1st Dist.] 1990, no pet.).

[2] *See also Williams*, 788 S.W.2d at 193 (Tex.App.—Houston [1st Dist.] 1990, no pet.)

3

trial on the merits would subject her to double jeopardy. Respondent, like the 290th District Court, declined to issue the writ. In *Carter*, this Court restated the aforementioned bright-line rule concerning the trial court's discretion to refuse issuance of habeas writs, and then bolstered its dismissal of Carter's appeal with another piece of Texas black letter law – namely, that no appeal lies from a trial court's denial of an application for a habeas writ. *Id* at 413.

This Court should adhere to *Carter* in both form and substance. The rule laid down in *Carter* unquestionably controls this case, and that rule definitively precludes mandamus. If a relator does not seek to compel performance of a ministerial act, then mandamus cannot lie. *In re Reed*, 137 S.W.3d at 678. If there is a modicum of discretion attendant to an act, then that act is absolutely precluded from being characterized as ministerial. *State ex rel. Curry*, 726 S.W.2d at 128. The decision of whether to issue a habeas writ is left to the trial court's discretion. This Court should maintain the commitment to settled law that it displayed in *Carter* and follow the bright-line rule restated therein.

Furthermore, Relator cites to Article 11.10, Texas Code of Criminal Procedure, as her authority for arguing the issuance of the writ of habeas corpus is a ministerial act. By its very terms, Article 11.10 applies only to individuals under circumstances described in the two preceding articles: "When motion has been made to a judge under the circumstances set forth in the two preceding Articles . . ." Tex. Code Crim. Proc. Ann. art. 11.10. Those articles deal with individuals, held in custody prior to trial, who challenge their incarceration under the traditional grounds of no probable cause or excessive bail. Neither Article, and more importantly Article 11.08 (which references

4

felony cases), refers to writs of habeas corpus to complain of violations of double jeopardy.

## B. The Texas Code of Criminal Procedure and Texas precedent confirm there is adequate legal relief short of mandamus available to respondent.

Mandamus cannot lie where another adequate remedy at law is available. *In re Reed,* 137 S.W.3d at 678. Article 11.05 of the Texas Code of Criminal Procedure provides that a habeas applicant may submit her petition for writ of habeas corpus to any court having jurisdiction. Tex. Code Crim. Proc. Ann. art. 11.05. Texas Courts have recognized this as an adequate legal remedy short of mandamus. " [Relator's] remedy is to file a petition for writ of habeas corpus in the Texas Court of Criminal Appeals, in any Texas district court other than the [court which refused to issue the writ], or in any Texas county court." *In re Piper,* 105 S.W.3d 107, 110 (Tex. App. 2003); see also *Nichlos v. State,* 255 S.W.2d 522, 526 (Tex. Crim. 1952) ("[W]here an application alleging unlawful restraint is presented to a judge, and he declines to hear the prayer for relief and any proof which may be offered in support thereof no appeal lies. . . [T]he relief available to the applicant being to present his application to another judge having jurisdiction); *Williams v. Harmon,* 788 S.W.2d 192, 193 (Tex. App. 1990) ("[T]he only remedy for denial of the writ is to present the application to another judge having jurisdiction"); *In re Altschul,* 236 S.W.3d 453, 456 (Tex. App. 2007) ("Generally, an appellate court may not afford mandamus relief over a trial court's refusal to consider a writ of habeas corpus application because the applicant can present the application to another district court").

5

## II. Trial Court Was Justified In Refusing to Issue Writ

### A. Relator created her own emergency

Notions of equity and justice are deeply engrained in the writ of habeas corpus. *Ex Parte Gaither*, 387 S.W.3d 643, 648 (Tex. Crim. App. 2012); *Blanton v. State,* 369 S.W.3d 894, 903 (Tex.Crim.App.2012). A person seeking relief in equity must arrive in court with clean hands. *Flores v. Flores*, 116 S.W.3d 870, 876 (Tex. App. 2003). And whether a person has arrived in court with cleans hands is a matter left to the sound discretion of the trial court. *Id.*

In this case, Relator did not file her habeas application until her third trial setting. Defense counsel was appointed on March 18. From March 18 to June 4, there was no mention of a habeas application. Yet, on the day the case was called to trial, counsel demanded a hearing on the freshly filed application.

Such tactics display the earmarks of an attempt to delay trial by way of subterfuge. Under Texas Law, trial courts are afforded the "inherent power to control the disposition of cases with economy of time and effort for itself, for counsel, and for litigants." *King Fisher Marine Serv., L.P. v. Tamez*, 443 S.W.3d 838, 843 (Tex. 2014), reh'g denied (Oct. 24, 2014). Consistent with his inherent power to control the disposition of his docket and the discretion to adjudge the equities that he is afforded by Texas Law, Relator refused to issue the writ.

Relator argues that she has no adequate remedy at law short of mandamus because Respondent has elected to proceed to trial immediately. This is, first, inaccurate – a two week continuance was granted on June 8. Second, even if Relator were unable to seek an alternative remedy because trial was imminent, it is worth considering whose conduct gave rise to that emergency.

6

As a matter of public policy, this Court must not allow the Great Writ to be refashioned into a tool for trial avoidance. Yet, such reformation would follow if trial courts were compelled to hold hearings on every habeas writ filed seconds after a case is sent to trial.

## B. Under Texas Law, Relator's habeas application was insufficient on its face

Relator's application for habeas was deficient on its face. Relator failed to comply with three of five requirements set forth by in Chapter 11, Article 4 of the Texas Code of Criminal Procedure. An application for writ of habeas corpus must state that the person, for whose benefit the application is submitted, is illegally restrained in her liberty. Tex. Code Crim. Proc. Ann. art. 11.14(1). When a party is confined or restrained by virtue of any order, a copy of that order must be annexed to the petition, unless it is stated that a copy cannot be obtained. Tex. Code Crim. Proc. Ann. art. 11.14(2). An oath must be set forth in the writ stating the allegations contained therein are true, according to the petitioner's belief. Tex. Code Crim. Proc. Ann. art. 11.14(3).

Relator's application contained no assertion that she is illegally restrained in her liberty, and the application thus violated subsection one. Relator is confined pursuant to a court order, yet no copy of that order is annexed to the petition, nor does the petition state that a copy could not be obtained. This affects a violation of subsection two. No verification or oath was set forth in the application, and thus subsection three was violated.

Notably, Relator never provided evidence that she was charged with a violation of the San Antonio Municipal Ordinance – it is simply set forth as a bald claim in the habeas application. Similarly unsubstantiated writs have been ruled insufficient by Texas courts.

7

See *Ex parte Crawford*, 506 S.W.2d 920 (Tex. Civ. App. 1974) (Application for writ of habeas held insufficient where application claimed applicant was illegally restrained, but failed to show that he was in fact restrained).

In conclusion, this Court should deny mandamus. Under Texas law, mandamus cannot lie unless Respondent can establish that, first, she seeks to compel performance of a ministerial duty, and, second, that she has no other adequate remedy at law. Both elements are absent in this case. *In re Reed,* 137 S.W.3d at 678. Under this Court's authority, as stated in *Carter*, a district court's decision on whether to issue a habeas writ is discretionary, and not ministerial, in nature. Furthermore, there are other adequate remedies at law available to Respondent - such as filing her habeas writ in any other court having jurisdiction. Ultimately, both the Texas Code of Criminal Procedure and considerations of equity fully justify Respondent's refusal to issue Relator's application for habeas.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Respondent submits that a hearing should not be ordered and that this Court decline Relator's Petition for Writ of Mandamus.

Respectfully submitted,

**MELISSA BARLOW FISCHER**
**General Administrative Counsel**
**Paul Elizondo Tower**
**101 W. Nueva, Suite 301**
**San Antonio, Texas 78205**
**Attorney for Respondent**

8

## CERTIFICATE OF SERVICE

I, Melissa Barlow Fischer, attorney for the Respondent, Judge Steven C. Hilbig, certify that a copy of the foregoing brief is being hand delivered and/or mailed to the following parties:

**Chad P. Van Brunt**
**Angela Moore**
310 S. St. Mary's St.
Tower Life, Suite 1840
San Antonio, Texas 78205
Attorneys for Sylvia Martinez

**Nicholas Lahood**
District Attorney, Bexar County
Paul Elizondo Tower
101 W. Nueva, 4th Floor
San Antonio, Texas 78205

MELISSA BARLOW FISCHER
Attorney for Respondent

Date: ___6/26___, 2015.

9

# CRIMINAL DOCKET SHEET

| FINGERPRINT | NAME OF PARTIES | ATTORNEYS | COURT REPORTER | COURT ACTIVITY |
|---|---|---|---|---|

**2014-CR-1384    D187   02/26/2014**

STATE OF TEXAS VS.                     SCC: 0

**MARTINEZ, SYLVIA G**

PROSTITUTION- 3 OR MORE PRIORS

**RIGHT THUMBPRINT**

### OFFENSE INFORMATION

REDUCED TO LESSER OFFENSE: _____

STATE PROCEEDS ON COUNT (s) _____
PARAGRAPH _____
ENHANCEMENT PARAGRAPH (s) _____

STATE ATTORNEY _____

DEFENSE ATTORNEY _____

COURT REPORTER _____

COURT INTERPRETER _____

___ **JUDGE PRESIDING** _____

___ NO RECOMMENDATION/ NO PLEA BARGAIN
___ PLEA BARGAIN AGREEMENT
___ _____ YRS MDS DYS (TDCJ – ID)(BDADC)(STATE JAIL)
___ $ _____ Fine $ _____ Restitution

___ Comm Supervision (Recommended)(Silent)(Opposed)

___ Def Adjudication (Recommended)(Silent)(Opposed)

___ Cases to Run Concurrent/Consecutively _____

Cases Taken into Consideration: _____
_____

____ **Non Binding Recommendations**

___ _____ DYS MOS(BCADC)(STATE JAIL)(Cond of Suprvsn)
___ _____ HRS Community Service/ _____ DYS ELM

_____ Substance Abuse Treatment Facility

___ _____ YRS MDS DYS (TDCJ-ID)(BCADC)(ST JAIL)
___ _____ $ _____ Fine $ _____ Restitution
___ Other: _____

**COURT RULING**

___ _____ YRS MOS DYS (TDCJ – (BCADC)(ST JAIL)
___ $ _____ Fine $ _____ Restitution
         Payable to: _____
___ Affirmative Finding of a Deadly Weapon
___ S.A.I.P. (Boot Camp) ___ Shock Supervision
___ Drivers License Suspension Start Date: _____
     End Date: _____
___ SAFPF (Comm Supervision)(Amended Comm Supv.)
___ Therapeutic Community Program
___ _____ HRS Community Service ___ DYS ELM
___ _____ DYS MOS (BCADC)(STATE  JAIL)(Cond of Supv)
___ (Work)(Weekend) Release Program (Cond of Supervsn)
___ Found TRUE to Enhancement Paragraph as a Repeater
___ Found TRUE to Enhancement Paragraphs as a Habitual
___ Other: _____

**DONNA KAY McKINNEY**
**BEXAR COUNTY DISTRICT CLERK**

By: _____ DEPUTY

| DATE OF ENTRY | COURT ENTRIES |
|---|---|
| 4/8/15 | _(handwritten)_ R/S Jan 19, 2015 |

# CERTIFICATE

**THE STATE OF TEXAS**

**COUNTY OF BEXAR**

I, DONNA KAY M<sup>C</sup>KINNEY, Clerk of the District Court of Bexar County, Texas do hereby certify that the documents contained in this record, Cause No. **2014CR1384**, of which this certification is attached are all of the documents specified by Texas Rule of Appellate Procedure 34.5 (a) and all other documents timely requested by a party to this proceeding under Texas Rule of Appellate Procedure 34.5 (b).

GIVEN UNDER MY HAND AND SEAL of said Court at office in the City of San Antonio, Bexar County, Texas this **June 29, 2015**.



**DONNA KAY M<sup>C</sup>KINNEY**

**Clerk,  187TH    Judicial District Court of Bexar County, Texas**

**By:** /s/ *Jamie L. Osio*
**Jamie L. Osio**
**APPEALS CLERK**

\* \* \* \* \* \* \* \* \*